Frank James **HUNT** and Albert McKinney,
Appellants,

v.

**The STATE of Texas, Appellee.**

No. 45776.

Court of Criminal Appeals of Texas.

Feb. 21, 1973.

Rehearing Denied April 25, 1973.

Raymon Jordan, Bobby H. Caldwell, Houston, for appellants.

Carol S. Vance, Dist. Atty., Warren E. White, Asst. Dist. Atty., Houston, and Jim D. Vollers, State's Atty. and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The convictions are for possession of a bomb; the punishment for each appellant, twenty-five years imprisonment.

The indictment drawn under the provisions of Art. 1723, Vernon's Ann.P.C. alleges that the appellants did unlawfully "possess and have in their control a bomb, to-wit: a collection of dynamite, caps and fuses capable by its ignition and explosion of causing damage to persons and property."

The appellants were observed and followed by law enforcement officers from the place where they obtained the dynamite and other materials at Rosenberg in Fort Bend County, to the home of McKinney, in Houston. There the officers placed the appellants and a woman companion, Blondella James, under arrest and took from the automobile fifty pounds of dynamite, two coils of fuse and one hundred blasting caps.

The sufficiency of the evidence is not challenged.

The appellants urge that the trial court erred in failing to charge the jury on an affirmative defense.

The trial court overruled the appellants' timely objection to the charge that it was "insufficient in law for the reason that nowhere therein does the court instruct the jury on the defensive issue as being commercial truckers, as provided by Section 9 of Article 1723 of the Texas Penal Code."

Article 1723, Section 9, V.A.P.C provides:

"Sec. 9. The provisions of this Act shall not apply to duly constituted police or law enforcement officers, or to members of the military, naval or air force establishments when acting within their official capacities, or to licensed and recognized manufacturers, storers or dealers in pest destroyers, chemical substances or laboratory supplies of any kind, or to licensed physicians, surgeons, chemists, pharmacists, nurses or hospital employees in their usual employment. *Nor shall it apply to railroads, commercial truckers or recognized operators or licensed dealers who transport or use dynamite or other explosives in legitimate mining, oil developing, manufacturing or displaying of fireworks,* or to torpedoes, fusees and other inflammable or explosive substances used by railroads as warning or signal devices, or to persons manufacturing, storing, transporting or selling ammunition where the said persons are engaged regularly in the legitimate business of dealing in such substances. Nor shall it apply to any sub-

stances or containers used or intended to be used for industrial, mechanical, laboratory or medical purposes, or for use in the arts and sciences, or for use as economic poisons, antifreeze preparations, or fuels. This Act shall exempt the following items: small arms propellant powder, and small arms primers, and percussion caps, and old fashioned black powder." (Emphasis added.)

The evidence which the appellants designate in their brief that entitles them to the requested charge is as follows:

"Q Mr. McKinney, do you own a truck?

"A Yes, sir.

"Q What kind of truck do you own?

"A A 1966 Volkswagen Van.

"Q And how long have you owned that truck?

"A About fourteen months—approximately fourteen months.

"Q Did you own that truck on or around April 16, 1970?

"A Yes, sir.

"Q And did you drive that truck that day?

"A Yes, sir.

"Q What did you use this truck for at that time?

"A I used it for a general delivery service and my own personal use.

"Q And did you regularly use that truck for that purpose?

"A Yes, sir.

"Q And for what purpose did he want to hire the truck?

"A He wanted me to go to Rosenberg and make a delivery for him.

"Q Exactly what did he ask you to do?

"A He asked me how much did I charge—how much would I charge to go to Rosenberg, Texas, and pick up a couple of light packages for him and he asked me how much would I charge?

"Q And did you tell him—what did you tell him?

"A I told him the truck was hired out at approximately—I mean at $2 an hour because this is the way I had figured.

.    .    .    .    .    .

"Q What did you say to him? Did you agree to pick it up?

"A Yes, sir.

"Q And why did you do that?

"A Because I wanted to make good the hot-shot delivery service and I knew definitely that if it didn't work this time that it was going to be over, I was going to go and tell the person that I was supposed to deliver it to that I just couldn't make it because it was just too much time and effort and money, you know, and I couldn't deliver it.

"Q All right then, you decided to go get the packages that Wednesday. Is that correct?

"A Yes, sir.

"Q And what mode of transportation did you use?

"A I used a 1963 Chevrolet (Sic).

"Q That's not the van you spoke of earlier?

"A No, sir.

"Q Why did you use that truck?

"A The van was broke down.

"Q You continued to have trouble with that van after you had trouble with it that Friday?

"A Right. After that Friday the van, you know, was giving me a lot of trouble but I still wanted to make good my word that I would do this for this person that I agreed to do it for and I wanted to do it because this was the beginning of a business that I was trying to start, you know, a business I was trying to start to supplement my income.

"Q Well then, did you subsequently borrow this 1963 automobile?

"A Yes, sir.

"Q And from whom did you borrow that car?

"A From Blondella James.

"Q And where did you borrow it from her?

"A At school."

If the portion of the statute which reads: ". . . who transport or use dynamite or other explosives in legitimate mining, oil developing, manufacturing or displaying of fireworks" is a qualification on the term "commercial trucker," the testimony obviously does not raise the issue which would have entitled the appellants to the desired charge. The appellants insist that if the rule of statutory construction referred to as the doctrine of "Last Antecedent" is applied, this court should not construe the term "commercial trucker" as being qualified by the above quoted clause.

The appellants cite for consideration the Supreme Court opinion in the case of City of Corsicana v. Willmann, 147 Tex. 377, 216 S.W.2d 175 (Tex.Sup.Ct.1949). Justice Brewster, writing for that court said:

"In support of its contention petitioner invokes the doctrine of Last Antecedent.

Under that canon of statutory construction a qualifying phrase must be confined to the words and phrases immediately preceding it to which it may be applied without impairing the meaning of the sentence; but the rule is neither controlling nor inflexible. It may be rebutted by the circumstances. It should not be applied without regard to the meaning of the language read as a whole. It is not applicable when a further extension is clearly required by the intent and meaning of the context."

If that rule is applied to the construction of the statute in this case as that rule was applied by the Supreme Court to the city ordinance in the case cited, the construction of Art. 1723, Sec. 9, V.A.P.C. would be that the above quoted clause from Sec. 9 does qualify the term "commercial trucker."

The appellants have cited many cases standing for the well recognized rule which stated in the words of the appellants' brief is "a defendant is entitled to an affirmative defensive instruction upon every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, contradicted, even if the trial court is of the opinion that the testimony is not entitled to belief." We agree with the rule that the appellants have attempted to state; however, we are convinced that it was not the intent of the legislature by their use of the term "commercial trucker"[1] in the statute in question to exempt the driver and occupant of a borrowed automobile transporting fifty pounds of dynamite, two coils of fuses and one hundred detonating caps from prosecution. The trial court properly refused to submit a charge which would permit the jury to

---

1. We are unable to find a statutory definition for the term "commercial trucker" although its use in the statute would appear to be similar to the term "common carrier" as the term is used in the exemption provision of Art. 725b, Sec. 12, V.A.P.C., the statute prohibiting the possession of narcotics, which is much more clear and reads as follows: "The provisions of this Act restricting the possession and having control of narcotic drugs shall not apply to common carriers or to warehousemen, while engaged in lawfully transporting or storing such drugs, or to any employee of the same acting within the scope of his employment; . . ."

find that the appellants were exempt as "commercial truckers."

◼ In one ground of error the appellant Hunt contends that the court erred in instructing the jury on the law of principals over his timely objection.

The appellant argues that the evidence in the record does not show his participation in the crime and merely shows his presence. The court's instruction on the law of principals included the admonishment that mere presence alone would not make one a principal.

The appellants were indicted and tried together, and it was the theory of the state that they were acting as principals. The evidence shows that both appellants together with Blondella James, in her automobile, traveled to Rosenberg. While there the appellant Hunt held the door open while the appellant McKinney and Titel, the seller of the explosives, loaded the materials which were plainly marked as being dynamite, fuses and detonating caps, into the automobile. The appellants then traveled back to Houston together and made what could be construed as obvious attempts to keep anyone from following them, by driving the car at varying rates of speed up to ninety-five miles per hour, stopping along the road, walking around the car and raising and lowering the hood. At the time of the arrest, the appellant Hunt and Blondella James were sitting in the car containing the explosive materials. This evidence is sufficient to raise the issue that the appellants were acting together and to entitle the state to have the court instruct the jury on the law of principals. See and compare Pruett v. State, 117 Tex.Cr.R. 273, 35 S.W.2d 718 (1931); Hill v. State, 420 S.W.2d 408 (Tex.Cr.App.1967); Smith v. State, 472 S.W.2d 121 (Tex.Cr.App. 1971) and Hannon v. State, 475 S.W.2d 800 (Tex.Cr.App.1972).

The appellants complain that the trial court erroneously failed to comply with their timely objection to the court's charge and their request that the charge instruct the jury that the witness Allen Titel was an accomplice witness as a matter of law, or in the alternative, to submit such issue for the jury's determination as a matter of fact.

◼◼ The evidence showed that the appellant McKinney had made various efforts to purchase explosive materials from the witness Titel, who was in the business of selling explosives to legitimate users of such materials. Titel informed law enforcement agencies of McKinney's efforts and he was instructed to permit the appellant McKinney to buy the materials. The trial court did charge at the request of appellants on the theory of entrapment, but refused to submit a charge that the witness Titel was an accomplice as a matter of law or to permit the jury to decide under the requested instruction whether or not he was an accomplice as a matter of fact. A witness must be criminally connected with the crime on trial before a charge on accomplice testimony is required. Under the facts in this record Titel was not a principal, an accomplice or an accessory, and was not shown to be connected with the offense by any unlawful act or omission. The evidence does not show Titel to be an accomplice witness as a matter of law and does not even raise a fact issue for the jury's determination. See Morgan v. State, 171 Tex.Cr.R. 187, 346 S.W.2d 116 (1961) and Vela v. State, 373 S.W.2d 505 (Tex. Cr.App.1963).

◼ Another one of the alleged grounds of error is that "The trial court erred in its failure to grant appellants' numerous requests for a mistrial because the State's Attorney insisted in his argument to the jury to make statements and at times during the trial to ask questions that were calculated to prejudice the minds of the jury thereby denied appellants a fair and impartial trial in violation of the Fourteenth Amendment to the Constitution of the United States."

The appellants in the argument in support of this vague, general ground of error

have set forth twenty-two separate points of objection. This ground of error and the argument thereunder do not meet the requirements of Art. 40.09, Sec. 9, Vernon's Ann.C.C.P. which in part, requires that the appellants' brief ". . . shall set forth separately each ground of error of which defendant desires to complain on appeal . . ." That Article also provides that this court shall review a ground of error ". . . notwithstanding any generality, vagueness or other technical defect that may exist in the language employed to set forth such ground of error," if "in light of arguments made in support thereof" it can be determined ". . . what point of objection is sought to be presented by such ground of error." Here there are twenty-two points of objection urged.

We cannot determine from this argument of multifarious points of objection the specific ground of error relied upon by the appellants. This ground of alleged error cannot be further considered because of the failure to comply with the requirements of Art. 40.09, Sec. 9, V.A.C.C.P.

■ The last ground of error is that "the evidence fails to establish a chain of custody of the dynamite, fuses and caps from the time of seizure to their introduction into evidence at trial."

The appellants state that "officer Joe E. Armstrong testified that he delivered the confiscated articles to Floyd McDonald, the chemist witness on April 27, 1970. The chemist Floyd McDonald, however, testified that the articles he received which he analyzed as dynamite were received on November 24, 1970. Therefore, there was not reasonable certainty that the analyzed articles were those in possession of applicants (sic)."

The state argues that the appellants have misinterpreted the record and are mistaken and that the record reflects the facts as follows: "Upon arrest of appellants at 5007 Cosby Street, Houston, Harris County, Texas, Intelligence Officers, Rose and Bernard, took custody of the evidence. Officer Rose testified that he placed his initials on the [ten] five (5) pound sticks of dynamite and delivered them to Sgt. Armstrong on April 22, 1970. Sgt. Armstrong testified that he received the same dynamite from Officers Rose and Bernard on April 22, 1970, and placed his initials on it; then on November 24, 1970, he delivered it to the chemist Floyd McDonald where, in the presence of Sgt. Armstrong, the dynamite, caps, and fuses were arranged for the taking of photographs. Floyd McDonald also placed his initials upon the dynamite and tested it. Officer Rose, Sgt. Armstrong, and Floyd McDonald identified the dynamite at the trial." The state's brief correctly summarized the testimony in the record. We find the chain of custody to have been shown and overrule this alleged ground of error. See Andrews v. State, 436 S.W.2d 546 (Tex.Cr.App. 1968) and Vol. 11A Tex.Digest, Criminal Law, ■

The judgments are affirmed.

Opinion approved by the Court.