Donald Ray LOVE alias Donald Ray Davis, Appellant,

v.

The STATE of Texas, Appellee.

No. 50404.

Court of Criminal Appeals of Texas.

Feb. 4, 1976.

**8**

Lindsey Enderby, Court appointed, Dallas, for appellant.

Henry Wade, Dist. Atty., Steve Wilensky and Les Eubanks, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder. Punishment was assessed at life.

The indictment alleged the offense occurred on or about September 2, 1973, and the record reflects that trial was in March, 1974.

The record reflects that the deceased, John Arthur Manson, was found in a severely wounded condition in his bedroom on September 3, 1973. Deceased was taken to Parkland Hospital, where he died eight days later.

Dr. William Sturner, medical examiner for Dallas County, testified that deceased died from "gunshot wounds, stab wounds and burns of the body." Dr. Sturner stated that any one of the causes, in and of itself, could have caused death.

In a written confession, appellant stated that he shot and stabbed the deceased. An oral confession by appellant led police to the recovery of appellant's knife. Appellant's fingerprints were found on a bottle in the bedroom in which deceased was killed. Tests performed in the Criminal Investigation Laboratory reflected that bullets taken from the body of the deceased were fired from a gun that witness Jordan testified appellant brought to his house on September 2, 1973. Appellant was placed in possession of deceased's automobile following the occasion in question.

Appellant complains that "the trial court erred in failing to enforce its orders after proper and timely filing by defendant and rulings by the court regarding disclosure of exculpatory evidence after admission at the time of trial by the prosecutor of 'possible indications of another individual or individuals' (as being participants in the murder) thus greatly prejudicing the appellant's right to a fair trial and right of due process."

It appears that appellant's contention is directed to the failure of the State to reveal that another person or persons were named by deceased prior to death as his assailants.

The record reflects that before trial began appellant requested the court to order production of exculpatory evidence and in that connection the prosecutor was questioned by appellant relative to identification of one Dale Patrick Williams as having been identified "as a participant in the stabbing and shooting." The prosecutor answered that there were some indications of possible participation by another individual or individuals, but that he could not verify the reliability of same and that Dale Patrick Williams was no-billed for this offense.

Police officer James Brigdon, who testified as to his investigation of the homicide, was recalled to the stand by appellant and stated that he attempted to talk to deceased in the hospital and, in response to his question "if it was one man," the deceased "nodded his head yes." Brigdon further testified that the deceased "nodded affirmatively" when asked if it was more than one man and that deceased "nodded affirmatively to everything I asked him." In addition, the deceased nodded yes to questions relative to whether "two colored males and a female" were involved, and when asked if he could name the girl Brigdon stated "we wasn't (sic) really sure what he said" but that he did seem to say Lynn or Linda.

James Barnwell, one of the officers who attempted to talk to the deceased in the hospital, testified on cross-examination by appellant that deceased was unable to speak but did nod his head when questions were asked him. According to Barnwell, the deceased nodded no when asked if Linda and two other named persons were involved in the attack on him, but did nod yes when asked if Williams had any part in the torture of him. The record reflects that the medical testimony adduced at the trial was in conflict relative to whether the deceased was able to answer questions calling for a yes or no answer.

■ The standard to be applied in cases of suppression or nondisclosure of evidence by the State is whether the testimony may have had an effect on the outcome of the trial. *Napue v. People of State of Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217; *Smith v. State,* Tex.Cr.App., 516 S.W.2d 415; *Crutcher v. State,* Tex.Cr.App., 481 S.W.2d 113; *Means v. State,* Tex.Cr.App., 429 S.W.2d 490.

■ The evidence of appellant's guilt was overwhelming and the evidence relative to other people's involvement was not only conflicting but came from the deceased at a time when there was serious doubt as to whether the deceased was able to comprehend the questions asked him. Assuming, arguendo, that appellant be correct in his contention that he should have been furnished such information prior to trial, we cannot conclude that such evidence would have exonerated appellant or have been of material importance to the defense. *Jackson v. Wainwright,* 5 Cir., 390 F.2d 288; *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *United States ex rel. Almeida v. Baldi,* 195 F.2d 815, 33 A.L.R.2d 1407, cert. denied, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341; *Curran v. State of Delaware,* 3 Cir., 259 F.2d 707, cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353. See Goldstein, "The State and the Accused: Balance of Advantage in Criminal Procedure," 69 Yale L.J. 1149 (1960).

No error is shown.

■ Appellant next contends "the trial court committed a reversible error in making comments upon the weight of the evidence and the conduct of trial counsel in questioning prosecution witnesses, in violation of Article 38.05, C.C.P."

Appellant directs our attention to eighteen instances in the record in which he claims the court made improper comments.

This ground of error and the argument thereunder do not comply with the requirements of Art. 40.09, Sec. 9, V.A.C.C.P., which requires that the appellant's brief ". . . shall set forth separately each ground of error of which defendant desires to complain on appeal." *Washington v. State,* Tex.Cr.App., 500 S.W.2d 485; *Smith v. State,* Tex.Cr.App., 481 S.W.2d 886. We recognize that Sec. 9 of Art. 40.09, supra, further provides that this Court shall review a ground of error " '. . . notwithstanding any generality, vagueness or other technical defect that may exist in the language employed to set forth such ground of error' " if " 'in light of arguments made in support thereof' " it can be determined " '. . . what point of objection is sought to be presented by such ground of error.' " *Hunt v. State,* Tex.Cr.App., 492 S.W.2d 540. Appellant directs our attention to numerous comments of the court without developing the context in which the same were made and concludes this ground of error by generally briefing the law relating to improper comments by a judge upon the weight of the evidence.

We cannot determine the specific ground of error relied upon by appellant and decline to further consider same because of the failure to comply with Art. 40.09, Sec. 9, V.A.C.C.P.

■ Appellant contends "the prosecutor made several attempts to improperly impeach appellant's witnesses, even after appellant's objection was properly sustained and the prosecutor was instructed to adhere to the court's ruling: and, further, that the

court improperly refused to grant appellant's motion for a mistrial."

Appellant urges that the "prosecutor attempted to impeach the witness by asking the witness concerning misdemeanor convictions not involving moral turpitude" and cites us to "page 994 line 10 through page 999, line 8" without identifying or setting forth the complained-of conduct of the prosecutor in such a way that the objection can be identified and understood. Art. 40.09, Sec. 9, V.A.C.C.P.; *Pitts v. State,* Tex.Cr. App., 478 S.W.2d 555. No error is shown.

■ Appellant contends "that the trial judge committed a reversible error in refusing to allow appellant to test the good faith of the prosecutor's impeachment of appellant's character by cross-examination and bill of exception."

The record reflects that Mrs. Dorothy Jean Nash was called as a witness by appellant at the punishment stage of the trial and in response to a question on direct examination about knowing appellant's reputation in the community, the witness answered in the affirmative and stated "everybody seemed to like him," that appellant and his family were staying at her house, and that she would be willing to provide him with a place to stay and help him get started again when he gets out of prison.

On cross-examination, the witness was asked if she had heard that appellant was arrested for rape and fondling of a juvenile on December 19, 1967, and the witness answered "No." At this juncture, appellant asked that the jury be excused so that the State "can show the good faith." After testimony was concluded at the punishment stage of the trial, appellant requested the court to conduct a hearing on the prosecutor's good faith in asking the question. In response to the court's inquiry, the prosecutor stated that appellant's arrest record reflected that on December 19, 1967, appellant "was arrested for rape and fondling a juvenile female and released to juvenile authorities." The court then stated: "The Court sees the record and the Court holds

that the State's attorney acted in good faith." Appellant requested that he be allowed to cross-examine the prosecutor, the request was denied by the court, and such denial forms the basis of appellant's contention.

Appellant argues that the prosecutor could not cross-examine appellant's character witness by asking have you heard questions which related to offenses committed when appellant was a juvenile.

V.T.C.A. Family Code, Section 51.13(b) (effective January 1, 1974), like its forerunner, Art. 2338–1, Sec. 13(e), V.A.C.S., prohibits the admission into evidence of the disposition of a juvenile proceeding. This Court has held that such prohibition in no way affects the qualification of a witness who acquired knowledge of the defendant's general reputation when he was a juvenile. See *Fortson v. State,* Tex.Cr.App., 474 S.W.2d 234; *Walker v. State,* Tex.Cr.App., 454 S.W.2d 415. In *Lee v. State,* Tex.Cr. App., 470 S.W.2d 664, this Court held that it was not improper in cross-examining a character witness to inquire about acts when defendant was a juvenile. See *Hart v. State,* Tex.Cr.App., 447 S.W.2d 944. We find no merit in appellant's complaint that he was not allowed to cross-examine the prosecutor to show the State's bad faith since such claim appears to have been bottomed on the premise that the State could not cross-examine a character witness about acts when appellant was a juvenile.

■ Appellant contends "the trial court committed a reversible error in not allowing testimony concerning the homosexual involvement of the deceased with various persons, such relationships being material to the case in chief as well as to the issue of mitigation of punishment."

By way of bill of exception, it was developed that the deceased had been observed in bed with another male on top of him. Appellant urges that he should have been allowed to explore the relationship between the deceased and Dale Williams since Wil-

liams' clothes had been found at deceased's home. Appellant admits that he knows of no authority to support this contention but suggests that great latitude should be taken in admitting potentially material evidence. We perceive no error in the court's refusal to allow appellant to present testimony concerning homosexual involvement of the deceased with various persons. See C. McCormick & Ray, Texas Evidence, Sec. 1493 (2d ed. 1956).

■ Appellant contends the prosecutor was in error in arguing facts outside the record.

The following argument of the prosecutor gives rise to appellant's contention:

"Now you know you have been treated to a great big helping of Defense tactics, what we call a smoke screen, here and I have to admit that Mr. Zimmerman [appellant's counsel] has come up with possibly the most novel tactic I have ever seen."

Appellant objected "to what is novel to Mr. Eubanks as his personal opinion," the court overruled the objection, and appellant urges that such action by the court requires reversal. The prosecutor then argued that while it was the usual thing for a defense lawyer to attack the prosecutor, it was unusual for counsel to attack the court and suggested that other tactics of counsel were unusual. We perceive no reversible error in the complained-of argument. See *Joshlin v. State,* Tex.Cr.App., 468 S.W.2d 826.

Appellant complains that the prosecutor was in error in arguing that an extraneous offense occurred.

The record reflects the following occurred during the prosecutor's argument which gives rise to this contention:

"MR. EUBANKS: . . . an attempted burglary; you could see how the items were moved around, a robbery; it's a reasonable deduction from the evidence.

"MR. ZIMMERMAN: Your Honor—

"MR. EUBANKS: His billfold was empty.

"MR. ZIMMERMAN: Object to the extraneous offense being related before the jury.

"THE COURT: Go ahead counsel."

■ Evidence before the jury reflects that deceased's wallet was found on the dresser in deceased's room and that there was no money in the wallet. In addition, there was evidence which placed appellant in possession of the deceased's car following the occasion in question. All of the facts and circumstances surrounding the offense on the occasion in question are admissible before the jury on the question of guilt and may be considered in determining punishment to be assessed. *Dunlap v. State,* Tex. Cr.App., 462 S.W.2d 591; *Taylor v. State,* Tex.Cr.App., 420 S.W.2d 601. Thus, if a robbery or burglary occurred at the time of the attack on the deceased, argument referring to the same would not be improper. We conclude that the argument that a burglary or robbery occurred on the occasion in question was a reasonable deduction from the evidence. See *Jackson v. State,* Tex.Cr. App., 486 S.W.2d 764.

■ Appellant further complains of still another argument of the prosecutor where it is contended that the prosecutor injected unsworn facts before the jury.

The record reflects that the prosecutor argued:

"Mr. Prather and I are not trophy hunters or out to do anything that we don't feel is right, under the facts of the case . . . ."

Appellant objected to the prosecutor expressing "his personal opinion as to what he believes is right," and the same was overruled by the court.

The record reflects that appellant had previously pointed out in his argument that it is the primary duty of prosecutors not to convict but to see that justice is done, and questioned the prosecutor's conduct about suppressing evidence and the fairness of the trial.

We conclude that the complained-of argument of the prosecutor was invited by the argument of appellant. See *Allen v. State,* Tex.Cr.App., 513 S.W.2d 556.

Lastly, appellant urges "cumulative error." Appellant complains that the court displayed "an insouciant attitude toward all participants" and that "the depths of the prosecutor's inexorable pursuit of victory is appalling." Appellant points to numerous rulings of the court, comments by the court and conduct of the prosecutor. This ground of error is clearly not in compliance with Art. 40.09, Sec. 9, V.A.C.C.P., and will not be reviewed.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.

MORRISON, Judge (concurring).

It is clearly improper to impeach an accused or a witness by proof of prior juvenile record. *Ruth v. State,* Tex.Cr.App., 522 S.W.2d 517, and *Rivas v. State,* Tex.Cr.App., 501 S.W.2d 918.

Another question, however, is presented when a reputation witness is being examined. As we said in *Fortson v. State,* Tex.Cr.App., 474 S.W.2d 234, at p. 235:

"It was not improper to inquire about appellant's reputation from witnesses having personal knowledge of the same. The fact that appellant was a juvenile when this reputation was acquired would not affect the admissibility of such testimony."

See also *Walker v. State,* Tex.Cr.App., 454 S.W.2d 415; *Lee v. State,* Tex.Cr.App., 470 S.W.2d 664; and *Hart v. State,* Tex.Cr.App., 447 S.W.2d 944.

Under these authorities, the question complained of was a proper inquiry because it was testing the witness' knowledge of appellant's reputation. If the question was proper, bad faith was not in the case.

ROBERTS, Judge (dissenting).

I would reverse this case on the basis of the trial court's failure to allow the appellant to test the prosecutor's good faith in impeaching the appellant at the punishment hearing through the use of offenses committed while the appellant was a juvenile.

The record reflects that the appellant's sister, Dorothy Jean Nash, testified at the punishment hearing concerning the appellant's reputation in the community. When asked what that reputation was, she replied that "everybody seemed to like him."

On cross-examination the prosecutor asked Mrs. Nash if she had heard "that on December 19 of 1967 the Defendant was arrested for rape and fondling of a juvenile." The witness answered, "No." The appellant then objected and asked that the jury be excused so that the State could show its good faith. The prosecutor indicated that he would be willing to comply with the appellant's request, and the court overruled the objection.

After the appellant had called his last witness at the punishment hearing, he again asked that the court conduct a hearing to determine whether the prosecutor had acted in good faith in asking the question. In response to the court's inquiry, and outside the presence of the jury, the prosecutor stated that appellant's arrest record reflected that on December 19, 1967, the appellant "was arrested for rape and fondling a juvenile female and released to juvenile authorities."

The court then stated: "The Court sees the record and the Court holds that the State's attorney acted in good faith." The trial court then denied the appellant's request that he be allowed to cross-examine the prosecutor concerning his good faith.

In *Rivas v. State,* 501 S.W.2d 918, 920 (Tex.Cr.App.1973), this Court specifically held that the juvenile record of a witness may not be used to impeach him. In *Ruth v. State,* 522 S.W.2d 517 (Tex.Cr.App.1975), the prosecutor repeatedly attempted to impeach the defendant at the punishment

stage through the use of the defendant's juvenile record. We reversed, holding that the "egregious action by the prosecutor was highly inflammatory and calculated to prejudice the defendant." *Ruth v. State,* supra, at 519. See V.T.C.A., Family Code, Sec. 51.13(b).

In *Davis v. State,* 160 Tex.Cr.R. 138, 140, 268 S.W.2d 152, 153 (1954), this Court held:

"The asking of a question is not always reversible error, but where it is shown, as was done in this case, that the prosecutor knew that the question was improper the matter became a more serious one."

See also *Blankenship v. State,* 163 Tex.Cr.R. 94, 289 S.W.2d 240 (1956); *Parrish v. State,* 163 Tex.Cr.R. 252, 290 S.W.2d 245 (1956); *Garcia v. State,* 167 Tex.Cr.R. 211, 319 S.W.2d 727 (1959); *Robertson v. State,* 463 S.W.2d 18 (Tex.Cr.App.1971).

In *Davis,* the prosecutor, while cross-examining the defendant about his whereabouts after the homicide, asked, "And you got in jail too, didn't you?" After replying in the affirmative the appellant was asked, "Had to pay a fine for choking an old man?" The jury was retired, and the defendant showed by bill of exception that the special prosecutor knew that the offense was a justice court offense not involving moral turpitude.[1]

In this case, the trial court prevented the appellant from cross-examining the prosecutor to determine whether the attempted impeachment was in bad faith—that is, whether the prosecutor knew when he asked the question that the appellant was a juvenile at the time of the earlier arrest. The appellant was thus precluded from developing what—under the authority of *Rivas, Ruth,* and *Davis*—might have been reversible error.

It is fundamental that a trial court may not deny to an accused the right to present evidence which may reflect reversible error. See Art. 40.09(6)(d)(1), Vernon's Ann.C.C.P. In *Miller v. State,* 52 Tex.Cr.R. 72, 76, 105 S.W. 502, 505 (1907), this Court said:

"It would seem from what has been stated that appellant used all the diligence possible to have this, as well as other bills prepared and filed during the term of the court, and there was ample time to have done so if proper action had been taken, and that he is deprived of his bill and placed in such an attitude before the court on appeal that he cannot have it considered, and this without his fault. This requires a reversal of this judgment, if there were no other reasons."

And in *White v. State,* 135 Tex.Cr.R. 210, 117 S.W.2d 450 (1938), this Court again reversed because of the refusal of the trial judge to allow the defendant to perfect his bill. White had been assessed the death penalty after being convicted of rape. In reversing, this Court said:

"However much we may regret to reverse cases of this character, yet, when the accused has not had a trial according to the laws of the land, it is the duty of this court, under their solemn oath, to see that it is accorded to him." *White v. State,* supra, 135 Tex.Cr.R. at 215, 117 S.W.2d at 453.

The appellant in this case, like White and Miller before him, has been deprived of the opportunity to preserve error for review in this Court; he "has not had a trial according to the laws of the land." *White v. State,* supra, and cases there cited. *Miller v. State,* supra; Art. 40.09(6)(d)(1), supra; *Cox v. State,* 137 Tex.Cr.R. 59, 128 S.W.2d 386 (1939); *Kilpatrick v. State,* 85 Tex.Cr.R. 172, 211 S.W. 230 (1919). And compare *Morris v. State,* 411 S.W.2d 730 (Tex.Cr.

1. An examination of the records of this Court shows what the *Davis* opinion strongly implies: that the method used to establish the prosecutor's knowledge was by cross-examination of the prosecutor himself. This Court approved of that method of establishing the prosecutor's bad faith and reiterated this approval in *Blankenship v. State,* supra, 163 Tex.Cr.R. at 96, 289 S.W.2d at 241–242, and *Robertson v. State,* supra, at 20. See also *Garcia v. State,* supra.

App.1967); *Vines v. State,* 479 S.W.2d 322 (Tex.Cr.App.1972); and *Jones v. State,* 496 S.W.2d 566 (Tex.Cr.App.1973).[2]

The judgment should be reversed.

---

**2.** This Court's holdings in *Fortson v. State,* 474 S.W.2d 234 (Tex.Cr.App.1971); *Walker v. State,* 454 S.W.2d 415 (Tex.Cr.App.1970); *Lee v. State,* 470 S.W.2d 664 (Tex.Cr.App. 1971); and *Hart v. State,* 447 S.W.2d 944 (Tex.Cr.App.1970) are not in point. In *Fortson* and *Walker,* the State was properly allowed to introduce testimony that the defendant's general reputation for being a peaceful and law abiding citizen was bad; no specific instances of misconduct were alluded to, as was done in the present case.

In *Lee,* this Court specifically held that "[t]he record does not indicate the questions

were asked in bad faith." *Lee,* supra, at 665, n. 1. A re-examination of the record of that case reveals that the defendant only questioned the prosecutor's bad faith, but made no attempt to gain a hearing on the issue outside the jury's presence.

In *Hart,* the careful trial court permitted the defendant to attempt to show that the disputed question was asked in bad faith; that this attempt was unsuccessful in Hart's case can hardly stand as authority for the proposition that the appellant in the present case could not have shown bad faith.