**James Dean REYNOLDS, Relator,**

v.

**Hon. Charles DICKENS, Respondent.**

**No. 2–84–239–CV.**

Court of Appeals of Texas,
Fort Worth.

Feb. 27, 1985.

Alley & Alley, Richard Alley, Fort Worth, for relator.

Tim Curry, Dist. Atty., and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for respondent.

## OPINION

JOE SPURLOCK, II, Justice.

By petition for writ of mandamus, Relator James Dean Reynolds, seeks to have this Court vacate the orders of the trial court which refused to grant all of Relator's motions for discovery in a criminal case. Relator is under indictment for Aggravated Sexual Assault and it is shown that the State intends to use in evidence upon his trial a videotaped interview with the alleged child victim under the purview of TEX.CODE CRIM.PROC.ANN. art. 38.-071 (Vernon Supp.1984). Our previous opinion of December 20th, 1984 is withdrawn.

In his pre-trial motion, Relator requested access, inspection and copying of such videotape in the following three particulars:

1. That he be permitted, at his own expense, to make a copy of the videotape, or;
2. That Relator's expert witness, a psychologist, be permitted to view the videotape along with defense counsel, or;
3. That the expert witness be permitted to view the tape simultaneously with the jury view and thereafter be excused from the witness rule so that he could testify.

All of the above requests were denied. However, the court was willing to order that the relator's attorney, alone, be permitted to view the tape with a prosecutor. This original proceeding was then filed in this Court.

The important facts occurring below need to be set out in order to understand the need for clarification in this new area of discovery. On November 2, 1984, Steve Laird and Richard Alley, counsel for relator, and Scott Wisch, Assistant District Attorney for Tarrant County, appeared at a pretrial hearing at which the following exchange took place:

"THE COURT: I believe the next motion in this file is the Defendant's Motion to Produce.

"MR. LAIRD: Yes, Your Honor. This has to do with the videotape itself that was made by the direction of the Texas Department of Human Resources. This videotape is in possession of the District Attorney's Office, and we do not feel that it's privileged in any way. We were given an opportunity—I say, we. I was given an opportunity right after I was hired, to view that several months ago. I have since requested another opportunity to view the videotape which has been denied. I have asked if a potential witness in this case, Dr. Swen Helge, a child psychologist could view the videotape. That also has been denied. In order to properly prepare this case, we need a copy of the videotape.

"The District Attorney's Office has a copy and they have access to it 24 hours a day, and if they want to come up here and

view it sixteen times a day, they are able to, and for us to view it one time before trial and maybe two over the course of several months, and not allow Dr. Helge to view it since I have been retained on this case, is going to deny the Defendant due process, and it's going to prevent us from adequately preparing this case.

"THE COURT: Well, you are getting back to Dr. Helge again, and you haven't given me any authority or any reason why an independent psychiatrist should have any access to a piece of the State's evidence.

"MR. LAIRD: Your Honor, I only pointed that out as a coincidental request. The main request which I have made heretofore and which I am making today, is to allow access to the videotape by the Defense attorneys.

"THE COURT: Well, I have already ordered that. Do you want a time?

"MR. LAIRD: Well, Your Honor, if I understand the Court correctly, you have allowed us one opportunity next week, the week before trial, to view it. We are not going to be in a position to properly prepare for the case unless we are able to view it on more than one occasion. We may need to view it several times, because as the Court is well aware, there might be things that are missed upon first viewing that might be picked up on the second or third viewing.

"That is the entire case that the District Attorney's Office is alleging against the Defendant, and they have got possession of the tape. They can view it 25 times a day if they want to; run it in slow motion, back and forward, backwards, and we are not asking for anything more than what the District Attorney's Office has access to. We are just asking to be put on equal footing.

"THE COURT: Are you prepared to pay for it?

"MR. LAIRD: Certainly.

"THE COURT: Do you have any law that would permit you to copy the tape?

"MR. LAIRD: This is a relatively new statute, as the Court is well aware, and the cases in this area are very limited, and I don't believe the Court has ever addressed this particular point. But as a matter of discovery under the Code of Criminal Procedure, there is nothing about this particular case that is privileged, and under 39.41 of the Code in order to allow due process for the Defendant, we are only asking for what we feel like we are legally entitled to to properly prepare this case.

"THE COURT: Well, the law provides another method. You can call the child as a witness. But I'm going to let you see it again. The State is going to set that up. Now, there have been other video type cases? This law is new, but how about these West Wind cases. Surely there is some law on that.

"MR. ALLEY: Your Honor, may I be heard?

"THE COURT: Yes

"MR. ALLEY: On West Wind, I don't believe there was any ruling as to whether or not they are discoverable and you can copy them. They were rulings as to whether or not they were admissible in Court. That's the situation that we find with this same statute. There are rulings as to their admissibility. There is not a ruling as to their discoverability. So, they would be as discoverable as anything else. They are not in the nature of a statement so much of the Defendant, but they are statements of conduct and they are going to be the crux of the case. There was a case by the Texas Supreme Court called Richardson vs. Green, 27 Texas Supreme Court Journal, on page 466.

"In that case, Dr. Helge and several other psychologists were permitted to review a videotape and were able to make an expert opinion as to whether or not abuse was present and other things also as to the subjectivity of the child in response to leading questions, all of which we believe will become an issue in this particular case and will aid him in making the professional opinion that he is going to be called upon to make as a witness.

"THE COURT: Mr. Wisch?

"MR. WISCH: My response, Your Honor, is that the clear legislative intent of the statute is the videotape supplant the direct evidence testimony of the child victim, and the Defense never has the opportunity to have the State place its witnesses in its case in chief under oath and repeat its case, and repeat its case, and repeat its case. It's only required to provide the witness available if the Defense wishes to question the witness, and this being a tape used in lieu of testimony, the State would urge the same ruling apply as would apply to any witness who would be giving direct testimony under oath.

"They are entitled to have discovery as to what that witness would say under the circumstances, but that can be fully met by allowing them to view the tape.

"MR. ALLEY: Your Honor, our final response to that would be, number one, that we are not just entitled to know what they said, but we are entitled under this statute to actually see the videotape and to use it to prepare. I do not believe the statute was there to supplant testimony, because there is no requirement that the child be placed under oath when they are videotaped. We believe in this videotape the child was not placed under oath or explained what an oath was. Furthermore, although the statute provides that we can call the child as a witness, the Court is also aware that you cannot impeach your own witness once you call them. So, that puts us in a catch twenty-two; that if we do call her for the purpose of cross-examining her to attack her testimony, that that is allowed under the statute, but prohibited by another statute.

"THE COURT: Well, Mr. Alley, I think the Court is being very liberal in permitting you to view the tape since the attorney has already seen it once; but to view it again. You are not telling me that you have a right to a witness' statement before they get on the witness stand, are you?

"MR. ALLEY: No, Your Honor. We are not.

"THE COURT: So, it's about the same thing, but I'm going to let you view it because this is new law. There are only a couple of cases on it here, but I'm not going to permit you to copy it or, unless you can show me some law that affects a criminal case, I'm not going to let your psychiatrist look at it. That's the ruling of the Court.

"MR. ALLEY: Your Honor, my one further question is this: Since he is going to be an expert witness, would that exempt him from the Rule so that he could view it when the jury views it?

"THE COURT: Well, no, sir. It would not exempt him from the Rule.

"MR. LAIRD: One final point on this that I would like to make on this, is that we were looking at this in terms of discovery and not preadmissibility questions; simply discovery under the Code of Criminal Procedure, and felt that it was not distinguishable from the other items that we feel are discoverable in this matter.

"THE COURT: Mr. Laird, if I was to take what the law really is, you probably couldn't see it at all. As I said, I think the Court is being rather liberal in letting you view it again, because there is no provision for you to view the tape to begin with under the law.

"MR. LAIRD: Do you wish us to contact the District Attorney's Office next week to set up a convenient time?

"THE COURT: You all can work it out.

"MR. WISCH: Other than settings involving our activities on Tuesday—Wednesday afternoon?

"THE COURT: All right. I would like to view it Monday afternoon myself."

Relator urges that art. 38.071 provides for such viewing by an expert witness, member of the "defense team", by its language which in pertinent part states:

(7) the defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence.

Relator argues that the psychologist employed by him to assist in his defense is his agent and is included within the definition of "attorney". In the case of *Ballew v. State*, 640 S.W.2d 237 (Tex.Crim. App.1980), the Court of Criminal Appeals decided a question of first impression in regard to the State's right to discovery and utilization of reports, notes and testimony of a defendant's psychiatrist witness as against the claim of attorney-client privilege. In holding that the attorney-client privilege extends to a defendant's psychiatrist's testimony, notes and reports, the Court observed that:

> Given the complexities of our modern society, lawyers often cannot represent their clients effectively without nonlegal assistance. As a result, it has become generally accepted that the scope of the attorney-client privilege encompasses agents whose services are required by the attorney in order to properly prepare his client's case. (Citations omitted.)

*Id.* at 239. The Court further noted that numerous sister states have so extended the attorney-client privilege. *Id.* at 240. We note that the attorney-client privilege has been extended to a "pre-hypnotic" interview with a defendant in a criminal case. *See Burnett v. State*, 642 S.W.2d 765, 769 (Tex.Crim.App.1983). Under the reasoning of *Ballew* and *Burnett*, above, and the cases cited therein, we hold that the privilege extended to a defendant or his attorney to view videotapes produced under the statute in question extends to an expert employed by the accused to assist in his defense.

Relator additionally contends, in support of his asserted discovery rights, that the right of inspection, copying or photographing of evidence, not privileged, in the possession of the State is afforded by the terms of TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1983), which provides:

> Upon motion of the defendant showing good cause therefore and upon notice to the other parties, the court in which an action is pending may order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies. The order shall specify the time, place and manner of making the inspection and taking the copies and photographs of any of the aforementioned documents or tangible evidence; provided, however, that the rights herein granted shall not extend to written communications between the State or any of its agents or representatives or employees. Nothing in this Act shall authorize the removal of such evidence from the possession of the State, and any inspection shall be in the presence of a representative of the State.

Recently the Court of Criminal Appeals had occasion to analyze the above discovery statute with regard to tape recording of a statement, made by an accused in conversation with an acquaintance who was cooperating with police by secretly wearing a tape recorder. In that case the Court wrote:

> Tape recordings of a statement by the accused are "objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action."

*Quinones v. State*, 592 S.W.2d 933, 939 (Tex.Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). We find no reason to distinguish between a surreptitiously recorded statement of an accused and the videotape of an interview with a child victim for the purpose of classifying the latter as discoverable. Accordingly, we hold that a videotape interview

with the alleged child witness in the case at bar is an object or tangible thing within the purview of art. 39.14, and as such, is subject to being copied for good cause shown.

The State has urged that Relator cannot complain that his attorneys and his expert witness were denied access to the videotape because both of them had in fact viewed it. The record discloses that one of the attorneys in the employ of Relator had viewed the videotape over six months prior to the filing of the motion for discovery and other attorneys had viewed the tape more recently. At the earlier time, the psychologist who is now assisting in the defense viewed the videotape. That portion of the record is developed in a statement of facts of a hearing had in the trial court 10 days after the order complained of here. Facts adduced at that hearing were not before the court when it denied Relators pre-trial discovery motions but will be considered by us, as the court has not yet changed its ruling.

The sole question before us is whether in the light of our holdings regarding the proper interpretation of articles 39.14 and 38.071, the extraordinary relief of mandamus is made necessary under the facts of this case.

■ It has been held that mandamus to compel a court to vacate or expunge a void order is a proper vehicle for attacking discovery orders. *Zenith Radio Corporation v. Hon. Harley Clark, Judge*, 665 S.W.2d 804, 806 (Tex.App.—Austin 1983, no writ). Citing *State v. Ferguson*, 133 Tex. 60, 125 S.W.2d 272 (1939); and Norvel & Sutton, *The Original Writ of Mandamus in the Supreme Court of Texas*, 1 St. Mary's L.J. 177, 181 (1969). Further "[a]n order is deemed void when rendered by a court having no jurisdiction or authority, when the order is violative of some constitutional right of a party, or is rendered as a result of an abuse of discretion by a judicial officer." *Zenith Radio Corporation*, 665 S.W.2d at 806. Mandamus will issue to correct a clear abuse of discretion by a trial court in a discovery proceeding and this is so, even when the district court's order

denies discovery rather than permits it. *Barker v. Dunham*, 551 S.W.2d 41, 42 (Tex.1977); *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977).

■ The most recent expression of our Supreme Court regarding mandamus in discovery proceedings are found in *Jampole v. Touchy*, 673 S.W.2d 569 (Tex.1984). There it was restated that mandamus will not issue unless a clear abuse of discretion is shown and that appellate courts will not intervene to control incidental trial court rulings when there is an adequate remedy by appeal. *Id.* at 572. In *Jampole* the Supreme Court acknowledged that the issue of whether the parties seeking mandamus had adequate remedies by appeal was not specifically addressed in the cases of *Barker v. Dunham* or *Allen v. Humphreys*, but declined to overrule those cases. *Id.* at 576. The Court observed further, in discussing the availability of appeal as an adequate remedy, that:

> Moreover, requiring a party to try his lawsuit, debilitated by the denial of proper discovery only to have that lawsuit rendered a certain nullity on appeal, falls well short of a remedy by appeal that is "equally convenient, beneficial, and effective as mandamus." (Citations omitted.)

*Id.* at 576. Such conclusion in a civil case it seems to us, would be even more sound in a criminal case. It makes little sense to argue that a new trial might be granted if an accused's right to a fair trial is impaired when the potential for error could be corrected summarily by granting a simple request for a copy of the tape.

In the case at bar, the State suggests that a good reason "for not letting mandamus substitute for an appeal, especially when pre-trial rulings are the issue, is that later rulings during the trial may moot the mandamus." Our reply to such suggestion is the same as that of the Supreme Court to a similar contention in *Jampole*, namely:

> Moreover, the trial court's willingness to reconsider does not alter the finality of its ruling. Litigants can always make new arguments that may change the trial

court's mind. This does not, however, preclude complaining of the action already taken. It is the court's order that counts, not the stated reasons or oral qualifications. (Citations omitted.)

*Id.* at 574. We therefore conclude that if there is a clear abuse of discretion in the instant order, Relator has no adequate remedy.

■ We now consider whether the trial judge clearly abused his discretion by denying the requested discovery. The ultimate purpose of discovery is to seek truth, so that litigation may be decided by what the facts reveal, not by what facts are concealed. *See Jampole,* 673 S.W.2d at 573. Here, the State's reason for opposing the Relators right to copy the videotape was articulated by the prosecutor at the November 2nd pretrial hearing when he stated:

My response, Your Honor, is that the clear legislative intent of the statute is the videotape supplant the direct evidence testimony of the child victim, and the Defense never has the opportunity to have the State place its witnesses in its case in chief under oath and repeat its case, and repeat its case, and repeat its case. It's only required to provide the witness available if the Defense wishes to question the witness, and this being a tape used in lieu of testimony, the State would urge the same ruling as would apply to any witness who would be giving direct testimony under oath.

They are entitled to have discovery as to what that witness would say under the circumstances, but that can be fully met by allowing them to view the tape.

This view adopted by the State overlooks the fact that article 38.071 permits an unsworn videotape interview of the child to be introduced as direct evidence.

Article 38.071 clearly requires that the interview be conducted by some person or persons other than an attorney for either party, that every voice on the recording is identified and that any statement elicited is not made in response to questioning calculated to lead the child to make a particular statement. We liken a visual-audible recording of such an interview to videotaped depositions of witnesses in civil cases. An additional safeguard in a civil case is that the deposition witness is sworn and faces possible penalties for perjury. No such safeguard is afforded the accused in the present videotape situation. Although, in each instance, the recordings of testimony given is admissible, that is not to say that the electronic reproduction of the event is admissible in toto, without the opportunity for objection as to any particular question or answer upon any of the time honored reasons, such as hearsay or leading and suggestive questions.

Just as is the case with videotaped depositions, the party against whom the recorded evidence is to be used ought to be in a position where he can lodge appropriate objections in a timely manner so as to allow for the deletion of the offending matter from the recording prior to the exhibition of the particular matter to the jury. The deprivation of reasonable opportunity for the Relator in this case to copy or review and evaluate the proposed videotape evidence with a view to objecting to any impropriety he might perceive, in our view is a denial of a substantial right. The interest of justice mandates that an accused have the same right to discover in a criminal case at least as much evidence as a person facing only a civil claim, and certainly not less.

In an instance where there is found to be an objectionable portion of the videotape, it seems far more appropriate that such fact be discovered, brought to the attention of the court and remedied if possible by proper, court ordered editing in preliminary proceedings rather than during trial, where an expungement of the offending material is likely to be cumbersome and frought with confusion and delay. The trial judge himself remarked, in the record, that he wished to view the videotape prior to trial.

We conclude that the order of the trial judge herein constitutes an abuse of his discretion. However, we are not to be understood as finding his action to be arbi-

trary, capricious or consciously indifferent to Relator's rights, especially in the light of the absence of any guiding precedent. We find that the effect of his order is to deny a clear substantial right of the Relator which is crucial to his defense and provided for by law, and that the relief sought by Relator from this Court by this action in mandamus is proper and should be granted.

We expect that Judge Dickens will vacate his order denying Relator the right to secure a copy of the videotape at Relator's expense and denying Relator's psychologist expert witness to view such videotape, and we expect that he will enter an order consistent with this opinion. Should he fail to do so, the clerk of this Court is directed to issue the writ of mandamus.

All other relief requested is denied.

HUGHES, J., dissents.

WILLIAMS, C.J., retired and HUGHES, J., retired, sitting by assignment.

JORDAN, J., not sitting.

BURDOCK, J., recused.

HUGHES, Justice, dissenting.

I respectfully dissent from the majority opinion in this original mandamus proceeding.

The relator has been indicted for three separate aggravated sexual assaults upon children and his trial on one of the causes, Cause No. 0229533D, was set for trial for November 12, 1984. At a pretrial hearing before that trial date, the trial court denied relator's motion under TEX.CODE CRIM. PROC.ANN. art. 39.14 (Vernon 1979) & art. 38.071 (Vernon Supp.1985), to have a videotape interview of the three children involved viewed by relator's retained psychologist. The motion also sought a copy of the tapes to be prepared at his expense. On November 9, 1984, relator filed his original petition for a writ of mandamus in this court to compel the trial court to grant his motion for his psychologist to view the tapes and to have a tape copied for his use during trial. On that same date, November 9, 1984, leave to file that petition was granted by this court and the matter was heard by this court on November 15, 1984.

On November 12, 1984, the date the case was set for trial, a second pretrial hearing during the pendency of the petition for writ of mandamus before this court, was held by the trial court, at which time the testimony of the psychologist, Arthur Swen Helge, as well as that of one of the prosecutors, was taken. A statement of facts of that November 12, 1984, pretrial hearing before the Hon. Charles Dickens, Judge of the 297th District Court, was filed in this court and is before us. That statement of facts on its face states that that hearing "was called for continuing Pre-Trial Motions, before the Honorable Charles Dickens, Judge of the 297th District Court."

The November 12, 1984 hearing, held after the petition for writ of mandamus was filed in this court, and before it was heard by this court, was a continuing pretrial hearing and, we must assume, was held for the purpose of again trying to persuade the trial judge to grant the motion for discovery concerning the videotaped interview of the three children. At this hearing, relator's counsel produced the psychologist, obviously for the purpose of convincing the trial judge of the necessity of his again viewing the videotape.

At this point, I deem it important to note that TEX.CODE CRIM.PROC.ANN. art. 38.071, sec. 2(a) (Vernon Supp.1985) provides that the recording of the oral statement of the child is admissible into evidence if (7) the defendant or his attorney is afforded an opportunity to view the recording before it is offered into evidence and (8) the child is available to testify.

It is admitted that on May 9, 1984, the psychologist, Arthur Swen Helge, viewed the videotapes of the interviews with all three children, along with the relator's then attorney, David Courtade, and one of the prosecutors. Helge also at that time made extensive notes as he viewed the tapes. At the pretrial hearing on November 12, 1984, although he was asked directly twice by one of the relator's current counsel, Rich-

ard Alley, if it was necessary to see those tapes again in order to render an expert opinion, Helge, on both occasions, would only say that "it would be helpful." Sometime after May 9, 1984, and before the filing of the discovery motion in the trial court, Steven Laird, one of relator's present counsel, also viewed the tapes, and at sometime during the first week of November, prior to the November 12th hearing, all three attorneys representing relator, Steven Laird, Randy Turner and Richard Alley, also viewed the tape in Cause No. 0229533D, the cause that was set for trial on November 12, 1984. It is therefore clear that the trial court, in denying the motion for the psychologist to again view the tapes, or to have the tapes copied, had before it the fact that the psychologist had already once seen the tapes, and taken full notes, and that four different attorneys had also viewed the tapes, three of them shortly prior to the November 12th pretrial hearing. These are facts that relator and the majority opinion would have us ignore.

Under these facts the requirement of art. 38.071, sec. 2(a)(7) was certainly adequately met, as was sec. 2(a)(8) because the children in this case were available to testify. Moreover, sec. 2(b) provides that if the electronic recording of the oral statement of a child is admitted into evidence, either party may call the child to testify and the opposing party may cross-examine the child. How, in view of all this evidence on the pretrial hearings, we can say that the trial court abused its discretion, is difficult for me to comprehend.

The majority opinion seems to rely rather heavily on several Supreme Court cases in civil matters in support of its holding that mandamus is proper in this case. I submit that there is a considerable difference with respect to discovery procedures in civil and criminal cases. In fact, in civil cases, some of the various discovery procedures permitted are self-executing and do not require trial court ruling. In civil cases the courts have traditionally permitted broad and liberal discovery, while in criminal cases, discovery has traditionally been much more limited, and is sparingly granted, and only at the discretion of the trial court. *See* art. 39.14. It is emphasized that art. 39.14 says that upon motion of the defendant showing good cause, the court *may* order the State to produce certain items.

The issue before us, then, is simply whether or not the trial judge, under the facts of this case, abused his discretion in denying relator's motion for the psychologist to again view the tapes of the interviews with the three children and to permit copying of the tape.

There is no mandatory duty or ministerial act involved in this case. It is clearly a question of the trial court's discretion in a discovery proceeding. The Court of Criminal Appeals has repeatedly said that there is no general right of discovery under art. 39.14, and that such matters are committed to the trial court's discretion. *Texas Dept. of Corrections v. Dalehite*, 623 S.W.2d 420, 424 (Tex.Crim.App.1981); *Quinones v. State*, 592 S.W.2d 933, 940 (Tex.Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980).

In *Quinones*, 592 S.W.2d at 940–41, the court upheld an order of a trial court refusing to allow discovery of a tape recording of the defendant's and an accomplice's conversation on the ground that there was no abuse of discretion. The court said that art. 39.14 makes it clear that the decision of what is discoverable is the decision of the trial court and even where, as in *Quinones*, reasons for the ruling by the trial court were incorrect, the reasons behind the trial court's exercise of its discretion will not create reversible error if the decision itself, regardless of its purported basis, did not exceed the limits of the court's discretion. *Id.* at 940; *accord United States v. Agurs*, 427 U.S. 97, 108–10, 96 S.Ct. 2392, 2399–01, 49 L.Ed.2d 342 (1976). The court in *Quinones* said that traditionally that court has declined to find reversible errors stemming from discovery motions where the defendant was not denied access to exculpatory or mitigating evidence which would have affected the out-

**488**

come of the trial in his favor. *See Quinones,* 592 S.W.2d at 941; *see also Granviel v. State,* 552 S.W.2d 107, 119 (Tex. Crim.App.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Love v. State,* 533 S.W.2d 6, 9 (Tex.Crim.App. 1976).

Texas has long followed the rule which requires the trial court to permit discovery only if the evidence sought is material to the defense of the accused. *See Stone v. State,* 583 S.W.2d 410, 415 (Tex.Crim.App. 1979) and *Frank v. State,* 558 S.W.2d 12, 14 (Tex.Crim.App.1977). In the latter two cases, the Court of Criminal Appeals defined "materiality" under Texas law in due process terms, employed by the Supreme Court of the United States in *Agurs,* saying:

> "[U]nless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose" ... *"The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."* ... [i]n determining materiality, the omission must be "evaluated in the context of the entire record," and constitutional error is committed only "if the omitted evidence creates a reasonable doubt that did not otherwise exist." [Emphasis added.]

*Stone v. State,* 583 S.W.2d at 415 (in part quoting *United States v. Agurs,* 427 U.S. at 109–12, 96 S.Ct. at 2400–02).

In granting the writ of mandamus in this case, this court is opening up "Pandora's Box." This could encourage the filing of petitions for writs of mandamus in many cases where the trial court has either granted or denied a defense motion for discovery. Such a practice would often, as the filing for the writ in this case did, result in delays of criminal trials. I submit, respectfully, that the majority decision in this case is an abuse of the well established rule of law that a trial judge's ruling in criminal discovery matters will not be disturbed unless a clear abuse of discretion is shown.

I would deny the writ of mandamus in this case.

HILL and GRAY, JJ., join.