### GARZA v. GARZA et al.

#### No. 10105.

Court of Civil Appeals of Texas. San Antonio.

Aug. 18, 1937.

Rehearing Denied Nov. 24, 1937.

Osce Fristoe, of Harlingen, and Ira Webster and Galbraith & Goodrich, all of Brownsville, for appellant.

Seabury, Taylor & Wagner, of Brownsville, Carter & Stiernberg, of Harlingen, and Fidencio Garza, of Edinburg, for appellees.

SLATTON, Justice.

Appellant, Paubla Corpos (Garza) sued the administrator of the estate of Romulo Garza, deceased, and the heirs at law of said deceased, alleging herself to have been the common-law wife of deceased, and thereby entitled to a division of the estate, together with a partition thereof. The cause was tried to a jury, submitted upon special issues, and upon an adverse answer judgment was entered by the trial court denying the appellant any recovery.

The appellant duly perfected her appeal, and is before this court asking for a reversal upon several assignments of error, many of which it will be unnecessary to discuss in the view we take of the case.

The record shows that Romulo Garza died intestate July 4, 1933. He had been married to Maria Rita Zamora de Garza, who predeceased him without leaving issue. Romulo Garza acquired a considerable estate, including town lots and property in the cities of Lyford and Raymondville, as well as other cities in the Valley, and various farms in Willacy, Cameron, Brooks, and Starr counties, as well as a good sized ranch in Hidalgo county.

The beginning of the relation alleged to have existed between the appellant and the deceased Romulo Garza began about the year 1917, and is alleged to have continued until his death. The residence of Romulo Garza apparently was on his ranch and in the town of Lyford. It appears that the mother of appellant had been the servant of Romulo Garza and his wife prior to the wife's death, and continued in that capacity until her death, after which the appellant assumed the same relation and continued until the alleged new relation occurred.

During a part of the time from 1917 until the death of Romulo Garza, the appellant had two nieces who resided with her and testified in her behalf on the trial of this cause. Felipa Martinez Sanchez, one of appellant's nieces, was called as a witness on behalf of appellant, and testified that she was 28 years of age, was a niece of appellant, and lived in the house with appellant from 1917 until 1930, and testified to many material incidents which were relevant to the issue being tried in this cause and which tended to support the allegations made by the appellant. Upon cross-examination, after testifying that she was married to Juan Sanchez and that she only lived with Juan Sanchez for a period of ten months, and that she had never been divorced from him, the following occurred:

"Q. And ten months after you married him (meaning Juan Sanchez) you then went to living with whom?

"Counsel: We think that it is immaterial to inquire into the private life. It is not shown the matter involved moral turpitude or anything that would throw any light on the testimony.

"The Court: The objection will be overruled.

"Counsel: We except.

"Q. What is the name of the fellow you live with now? A. Rafael Cantu.

"Counsel: We renew the objection. Morals are not a matter of reputation for truth and veracity and there is no indictment or anything that involves moral turpitude.

"The Court: The objection will be overruled.

"Counsel: We except.

"Q. When did you take up with him? A. In 1930.

"Counsel: The Court understands our objections go to all that kind of testimony?

"The Court: Yes.

"Q. You took up with him just about like your Aunt took up with Romulo?

"Counsel: We object to that and ask the Court to instruct the jury not to regard it.

"The Court: In your deliberations you will not consider the question propounded to the witness."

The appellant asserts that this being an important witness and her testimony being material upon the issues joined, it was reversible error for the trial court to admit, over her timely objection, the evidence above detailed, for the reason that it brings the witness in disrepute before the jury by the proof of specific acts of immorality. The appellees assert that the examination of a witness as to age, status, residence, occupation, and other present surroundings, is not confined to the side offering such witness, and that such facts may be brought out on cross-examination, whether the answer would add to his credit or tend to discredit such a witness with the jury.

We have given the contention made by the parties our most serious consideration, and have made an independent research of the proposition of law involved. It has been the rule in this state since an early day, regardless of the rule elsewhere, that in the impeachment of a witness the inquiry should be confined to his general reputation for truth and should not extend to his general moral character, and that a witness can be impeached by general evidence only, and not by evidence as to particular facts. Boon v. Weathered's Adm'r, 23 Tex. 675. This rule has been rigidly enforced by the appellate courts of this state in all of the cases which we have been able to find. Moody & Co. v. Rowland, 46 Tex.Civ.App. 412, 102 S.W. 911; Turner v. McKinney (Tex.Civ.App.) 182 S.W. 431; Burchill v. Hermsmeyer (Tex.Civ. App.) 230 S.W. 809, 813; Gulf, C. & S. F. Railway Company v. Johnson, 83 Tex. 628, 19 S.W. 151; Moore v. Moore, 73 Tex. 382, 11 S.W. 396; Underwood Typewriter Co. v. Shouldis (Tex.Civ.App.) 253 S.W. 935, 941.

In the Burchill Case, supra, it is said:

"Appellant complains of the court's action in requiring her, over the objection of her counsel that it was irrelevant and immaterial, to testify to the effect that in securing the charter of the development company she made affidavit that the 40 acres of land in controversy was worth $50,-000, and that later, after the issuance of the charter, she and her daughter conveyed to the development company in fee-simple title the same land for the recited consideration of $10,000, and to permit and require her further cross-examination, shown as follows:

" 'Q. Why did you put the consideration in the deed (the deed to the development company) at $10,000, instead of $50,000? A. I didn't want to pay the enormous sum for stamps, and I made the consideration, not the valuation.

" 'Q. Didn't you know that it was a violation of the United States laws to make a deed and to understate the valuation in the deed in order to beat the Internal Revenue Tax?' * * *

"We are of the opinion that the assignments and propositions relating to the proceedings thus indicated must be sustained.

"After an elaborate review of the authorities, it was decided by our Supreme Court in the case of Boon v. Weathered's Adm'r, supra, 23 Tex. 675, that a witness cannot be impeached by evidence as to particular facts, as shown above. It cannot be so done even on cross-examination. See Gulf, C. & S. F. Railway Co. v. Johnson, 83 Tex. [628] 633, 19 S.W. 151, where it was held that the court erred in requiring the witness to state that he was a deserter from the United States Army.

"In the case of Missouri, K. & T. Ry. Co. v. Creason, 101 Tex. 335, 107 S.W. 527, in an opinion by Mr. Justice Brown, the case of Boon v. Weathered's Adm'r, supra, among others, was approved, and it was distinctly held error for the trial court to permit the opposing party, upon cross-examination of a witness, to prove that the witness had been charged with arson and other crimes.

"In Price v. Wakeham, 48 Tex.Civ.App. 339, 107 S.W. [132] 133, it was held to be error in an action on a liquor dealer's bond to show by cross-examination of a witness that the witness was unmarried and had associated with prostitutes, etc.

"In the case of Moody & Co. v. Rowland, 46 Tex.Civ.App. 412, 102 S.W. 911, it was held on rehearing that under the circumstances of that case it was not error on the part of the trial court to exclude evidence tending to show that the appellee in a different transaction exhibited to appel-

lant a fraudulent and forged abstract of title to land. * * *

"In Taylor v. McFatter [Tex.Civ.App.] 109 S.W. 395, it was held that the trial court properly refused to permit the defendant to ask the plaintiff on cross-examination whether since he had lived in the neighborhood he had not continually had trouble and lawsuits with his neighbor.

"In Moore v. Moore, 73 Tex. 382, 11 S.W. 396, supra, the plaintiff proposed to prove by the defendant while on the witness stand, for the purpose of impeaching his credibility, that he, the witness, had been in the Confederate Army, and later had taken the ironclad oath to qualify himself to hold office under the federal government. * * *

"In Harrington v. H. B. Claflin & Co., 28 Tex.Civ.App. 100, 66 S.W. 898, by the Dallas Court of Civil Appeals, writ of error refused, it was held that a witness could not be impeached by a single transaction, tending to show want of integrity on his part, when the transaction itself was not material to any issue in the case.

"In the case of City of San Antonio v. Wildenstein, 49 Tex.Civ.App. 514, 109 S.W. 231, writ of error refused, it was held that in an action by a married woman she could not be impeached by evidence that a child had been born to her three months after her marriage.

"In Pennsylvania Fire Insurance Company v. Faires, 13 Tex.Civ.App. 111, 35 S.W. 55, a ruling of the trial court, to the effect that a plaintiff testifying in her own behalf could not be discredited by showing that she kept an assignation house, was approved.

"In Missouri, K. & T. Railroad Company v. Adams, 42 Tex.Civ.App. 274, 114 S.W. 453, it was held that a witness could not be impeached by evidence of particular instances of untruthfulness.

"In Dooley v. Boiders [Tex.Civ.App.] 128 S.W. 690, it was held that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue merely for the purpose of impeaching him."

In the case of White v. H. & T. C. R. R. Company (Tex.Civ.App.) 46 S.W. 382, it was held that it was reversible error for the trial court to admit evidence, over objection, that the witness had no occupation, no means of livelihood, was a street loafer and a bum; and in the same case, on a subsequent appeal, this court held that the trial court was correct in excluding such testimony.

In the case of Tipton v. Thompson et al., 21 Tex.Civ.App. 143, 50 S.W. 641, it was ruled that the general reputation for unchastity and the conducting of a house of prostitution was inadmissible to impeach a witness.

As was said in the Underwood Case, supra: "Chastity is one trait of character, truthfulness quite another, and since the same constituent qualities of mind and heart do not necessarily inhere in or run common to both, the existence or nonexistence of the one would, in our opinion, have no reasonable tendency to render probable or improbable the possession of the other."

█ Here one of appellant's material witnesses was required to bring herself in disrepute before the jury in compelling her to admit that she was living in adultery. That she was an adulteress does not necessarily mean that she would swear falsely. This, in effect, was an impeachment of a witness, and a material one, on specific acts of improper conduct. All of the Texas cases heretofore cited condemn this practice and apply the rule well established, as hereinbefore pointed out. We are of opinion, therefore, that the action of the trial court in the admission of this evidence is reversible error, and for this reason this cause must be reversed.

Other assignments of error have been presented by appellant, but as the same are not likely to occur upon another trial it will be unnecessary for us to discuss them.

█ The appellee asserts that the evidence not having shown a prima facie case of either cohabitation as man and wife between Romulo Garza, deceased, and Paubla Corpos, or that they held each other out to the public as being husband and wife, a verdict for the appellees should have been directed by the trial court, and that all claimed errors of appellant become immaterial. We have considered the evidence in the record before us with this challenge in view, and are of opinion that the evidence offered by the appellant raises an issue of fact correctly submitted by the trial court. We do not discuss the evidence in view of another trial. For the erroneous admission of the evidence above discussed, the judgment of the trial court will be here reversed and remanded for another trial.