David Richard JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 50911.

Court of Criminal Appeals of Texas.

March 17, 1976.

On Rehearing June 22, 1977.

Second Rehearing Denied July 13, 1977.

Charles D. Butts, San Antonio, for appellant.

Ted Butler, Dist. Atty., Charles T. Conaway, Lucien B. Campbell and Susan Reed, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction of voluntary manslaughter. The jury assessed punishment at fifteen years.

Connie Lee Jones, the two-year-old stepdaughter of appellant, was killed. The main witness for the State was Mary Frances Kusenberger who was the mother of the child and wife of appellant at the time of the homicide. Hereafter she will be referred to as Mary Frances. The appellant contends that the court unduly limited cross-examination of Mary Frances and refused to admit testimony to impeach her credibility.

Mary Frances testified that on April 30, 1973, she married appellant. Her two daughters, Lola Jean Jones, age four, and Connie Lee Jones, age two, lived with them. Appellant supported the family from an insurance settlement for a work-related injury.

On January 5, 1974, the family was staying at the home of appellant's brother. Late that day the appellant borrowed his father's gun and took his family deer hunting. After shooting a deer, they returned to his brother's to dress the meat. His brother's family was not home at this time. The appellant became angry with Connie Lee for wetting her pants in the car. Because of this he made her stand behind a

closet door. He also became angry with Lola Jean for playing with some toys she had been told not to touch. He made her stand behind another door.

While the appellant was dressing the deer in the bathroom, Connie, whom the appellant had told to hold her hands behind her back, had let her hands fall to her side. Seeing this he slammed the door against Connie. The child wet her pants again and this infuriated appellant. He then grabbed Connie and took her into the living room. He sat on the couch and threw the child on the floor. He then took off his shoe and threw it at her and hit her in the head. He then removed his belt and hit Connie between the legs, on her stomach and about the arms. Mary Frances testified that she tried to run out and get help but that the appellant prevented her from leaving the house or protecting her child. Following this beating Connie became unconscious. From then (January 5) until her death on January 9, 1974, Connie Lee could not use her left arm or leg, could no longer talk and could not hold down food or liquids. He refused to take her to a hospital because he did not want to have to answer any questions about her condition.

From the fifth to the ninth of January, the family drove from bar to bar and stayed in cheap motels. Mary Frances testified that she tried to get Connie to eat or drink but was unsuccessful. She said that she was unable to go for help because the appellant was with her continually. She also testified that she was afraid of the appellant and that she had many bruises on her body from his mistreatment of her.

Finally on the night of January 9th, thinking Connie was dead or near death, the appellant consented to take her to the hospital. At that time the appellant told his brother that Connie had fallen out of a truck and was injured. The appellant gave the same explanation to the attending doctor who had announced Connie Lee dead on arrival at the hospital. He also gave this explanation to the investigating officer who spoke with him at the hospital.

According to the pathologist who performed the autopsy on the body of Connie Lee Jones, the child died as a result of injuries to the head caused by multiple blows to the face and head. The doctor testified that the bruises on the deceased's body ranged in age from one to three weeks. On cross-examination the doctor stated that it was possible that the child could have died from a severe blow to the head inflicted as early as the latter part of November of 1973.

Mary Frances stated that the appellant had not mistreated the children until around December 1, 1973 when his insurance money ran short. She also testified that around December 17th the appellant kicked Connie in the chin with his boot for leaving a cold shower where he had put her for punishment. This kick caused a deep gash in Connie's chin. This gash was still prominent at the time of her death.

Most of appellant's grounds of error concern the limitation placed on his cross-examination and attempted impeachment of Mary Frances' testimony. At first the trial court limited the cross-examination about her treatment of the children to the time period from December 1, 1973 to January 9, 1974. Mary Frances had testified that this period covered the time that the appellant had abused the children. Later, after the pathologist testified that the injuries leading to Connie's death could have occurred during the latter part of November, the trial court permitted the appellant to cross-examine her about incidents from the middle of November, 1973 to January 9, 1974.

In ground of error number one, appellant contends that this limitation placed on his cross-examination of Mary Frances was error. He testified that the child had died from the innumerable beatings inflicted upon her by Mary Frances. The appellant related that Mary Frances had not wanted to take the child to the hospital because she believed that Connie only had a virus. She told the appellant that she was nursing Connie with aspirin and was feeding her baby food. During the trial, Mary Frances denied ever beating her children. Counsel for appellant stated that he wanted to show

her motive, bias and animus for testifying against the appellant. Through cross-examination and through the testimony of other witnesses, he also sought to establish his defensive theory that Mary Frances and not he had caused Connie Lee's death.

■ Wide latitude is given in showing the motive, bias and prejudice of a particular witness. See *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and *Jackson v. State*, 482 S.W.2d 864 (Tex. Cr.App.1972). In this case, unlike *Davis v. Alaska, supra*, and *Jackson v. State, supra*, the appellant was able to introduce much testimony tending to show possible prejudice and motive on Mary Frances' part.

■ On cross-examination, the appellant asked Mary Frances whether the gash on Connie's chin had not come from being pushed into the car's ashtray by her sister or from being struck by Mary Frances with a hair spray can instead of a kick from the appellant's boot. This she denied as well as practically all of his other accusatory questions. The appellant inquired of her if bruises on the child's body came from a barroom brawl with another woman and not from the appellant. He asked Mary Frances if she hadn't placed Connie in their car dressed in only a diaper for long periods of time after her injury. Mary Frances was asked on cross-examination if two women had tried to stop her from beating her children outside of a tavern. She was questioned if she was ever in a restroom with another woman and asked the woman for money to buy whiskey but said nothing about her seriously ill child. Mary Frances was questioned why, as the mother of a badly injured child, she did not make more of an effort to tell someone that her husband was letting her child die. She replied that she was afraid of the appellant. The record shows that he was a large man. During cross-examination she was asked if a waitress had ever admonished her against beating her children and whether Lola Jean had ever beaten Connie with a flashlight. In an effort to find inconsistencies in her testimony, the appellant elicited from her once more why they finally decided to take

Connie to the hospital and under what circumstances the appellant had kicked Connie in the chin with his boot. Mary Frances was asked if she did not demand, on January 6, 1974, that the appellant spank the unresponsive Connie and when he refused if she did not beat the child about the head with her fist. As shown by the above examples, the appellant was able to cross-examine Mary Frances extensively about her treatment of her child within the allotted time period. Her answers to these questions were not favorable to the appellant. We cannot say that the appellant was unduly hampered in his cross-examination by the time limitation set by the trial court. See grounds of error four, seven, eight, nine and ten, infra.

In his second ground of error appellant argues that he should have been allowed to cross-examine Mary Frances about an incident at the Aristocrat Apartments in late November, 1973. In the bill of exception developed on his point, Mary Frances was asked if she had not hit Connie Lee with a hair brush causing a bad bruise on the right side of her face. Mary Frances was also asked if during her stay at the Aristocrat Apartments the manager did not tell her that she would have to stop mistreating her children.

■ After the pathologist testified that the fatal wound could have occurred as early as November, the trial court enlarged the time period to include the incidents at the Aristocrat Apartments. When this evidence became admissible, the appellant did not offer it again by recalling Mary Frances. By not recalling the witness, the appellant waived any objection he might have had to the exclusion of her testimony. *Johnson v. State*, 527 S.W.2d 525 (Tex.Cr. App.1975).

In ground of error number four, the appellant complains of being limited in his proof, through the testimony of other witnesses, that Mary Frances mistreated her children. Particularly in grounds of error seven, eight, nine and ten he complains that he was not allowed to introduce testimony that Mary Frances physically abused her

children in June, 1973, in September, 1973, in October of 1973 and in 1972 when Connie was a baby.

The following testimony was excluded by the trial court because it dealt with instances of child abuse prior to the middle of November 1973. Patricia Malone testified outside the presence of the jury that one afternoon in late September of 1973 the appellant, Mary Frances and the two children were visiting with Mrs. Malone in her backyard. When Mary Frances said it was time to leave, Connie began to cry. Mary Frances hit Connie across the face with her hand and knocked her down. When Mrs. Malone objected to her treatment of the children, Mary Frances grabbed Lola Jean by the arm, picked Connie up by her hair and dragged them to their car. Jody Hartsfield testified outside the presence of the jury that around October 12, 1973, while living with Mary Frances, she saw Mary Frances kick Lola Jean for asking for a drink of water. Kathy Tolison testified in a bill of exception that, while living with Mary Frances in 1972, she saw her knock Connie up against the wall with her fist after she had asked for a drink of water.

Although restricted to a time period, the appellant called several witnesses to show that Mary Frances had mistreated her children. Patricia Malone, the appellant's sister, testified before the jury that, even after his insurance money ran out, the appellant did not complain about the added responsibility of the two children. Patricia Malone also testified that Mary Frances' reputation for veracity was bad. Shirley Davis testified that while working at a bar towards the end of November, 1973, she noticed that one of Mary Frances' children was crying in their car. Shirley Davis testified that she watched Mary Frances go out to the car and could see her slap the child and heard her say "shut up or she would knock the hell out of her." The witness also testified that Mary Frances' reputation for veracity was bad. Debra Hicks testified before the jury that she had taken care of the children from around the middle of November, 1973 until Christmas, 1973. She testified that she had noticed bruises on the children during this interval. Debra Hicks stated that Mary Frances told her that the police had come to their apartment in December to check out a beaten child report and that she told the police that the child had fallen down the stairs. Mary Frances told Debra Hicks that she had actually whipped the child. The witness also testified that during the latter part of November and December she had seen Mary Frances hit her children. Charlene Mahoula testified before the jury that during the latter part of November when working at a bar she heard screams from the parking lot and discovered Mary's children in their car. She found that the oldest child had sprayed the younger one in the eye with hair spray. She told Mary Frances, but Mary Frances did nothing about it until another waitress brought it to her attention. Mary Frances then went out to the car and started to hit the older girl in the face with her fist. Aundie Wilkins also testified about this hair spray incident. She related that the appellant came out of the bar and made Mary Frances stop hitting the child. Jody Hartsfield testified that during December, while Mary Frances was living at the Aristocrat Apartments, she saw Mary Frances hit Connie with the back part of her fist and knock her against a wall. Nell Jacobs testified that she was with Mary Frances in a bar on the night of Connie's death and that, while in the restroom together, Mary Frances asked her for a loan of money because she had lost her purse. Nell Jacobs said that Mary Frances did not mention her children nor did she seem upset.

■ We cannot say that under the circumstances of this case the trial court was unreasonable or arbitrary in restricting testimony to the time period that the pathologist testified that the child could have received the fatal injury or injuries. Grounds of error four, seven, eight, nine and ten are overruled.

In grounds of error five, eleven and fourteen, the appellant complains of the exclusion of testimony concerning Mary Frances' behavior after the death of Connie Lee.

The appellant wanted to introduce the following testimony: Mary Frances' statements, developed on a bill of exception, concerning her presence at the Silver Saddle Bar on the night following the death of her child; the testimony in a bill of exception of welfare worker Nancy Ramsey that, when she told Mary Frances on January 10, 1974 that the state was going to take custody of Lola Jean, Mary Frances threw Lola Jean up against the wall and shouted, "I dare you to accuse me. Just take my f___ing kid"; Kathy Tolison's testimony that Mary Frances threatened her with a knife after she had testified against her at the welfare hearing held after Connie's death. The appellant argues that he should have been allowed to introduce this testimony in order to show Mary Frances' lack of feeling after homicide and to impeach her demeanor at the trial as a loving mother.

Although such subsequent conduct as flight from the scene of a crime may be used to show guilt, *Arivette v. State*, 513 S.W.2d 857 (Tex.Cr.App.1974), this subsequent conduct on the part of Mary Frances does not indicate consciousness of guilt on her part. Mary Frances testified that she was present in the Silver Saddle Bar on the night of January 10th to discuss funeral arrangements with Bill Jones, Connie's father. She related that she did not have a quiet place to go and that she and members of her family were given the use of a room so that they could make plans in private. If this could have indicated a feeling of guilt on her part about Connie's death, it would be remote. If the exclusion of testimony is error, it is not reversible.

The appellant also contends that he wanted to introduce the testimony to impeach Mary Frances' demeanor as a loving mother. He was able to offer substantial testimony dealing with Mary Frances' mistreatment of her children. Further testimony would only be cumulative.

In support of his contention that the evidence should not have been limited by the trial court, the appellant urges that V.T.C.A., Penal Code, Section 19.06, should be extended to include all relevant facts and circumstances surrounding the relationship between a witness and the deceased. Section 19.06 is virtually the same as its predecessor, Article 1257a of the 1925 Penal Code. Under the 1925 Penal Code, "accused" was defined as ". . . any person who, in a legal manner, is held to answer for an offense, at any stage of the proceeding . . . ." We hold that Section 19.06, *supra*, is not applicable to a witness who is not accused.

In his sixth ground of error, appellant argues that he should have been allowed to prove Mary Frances' general reputation for abusing her children. Generally, for impeachment purposes, reputation evidence is restricted to that for truth and veracity. Evidence of a particular bad character trait such as child abuse is properly excluded. McCormick and Ray, Texas Law of Evidence, Section 647 (2nd ed.); *Hartford Accident and Indemnity Company v. Williams*, 516 S.W.2d 425 (Tex.Civ.App. 1974), ref. n.r.e.; *Garza v. Garza*, 109 S.W.2d 1079 (Tex.Civ.App.1937), error dismissed; *Minor v. State*, 166 Tex.Cr.R. 69, 311 S.W.2d 241 (1958); *Mares v. State*, 71 Tex.Cr.R. 303, 158 S.W. 1130 (1913); Branch's Ann.P.C.2d, Section 206, page 232; *Cochran v. State*, 130 Tex.Cr.R. 146, 92 S.W.2d 1041 (1936).

In this case, appellant was permitted to introduce evidence of particular acts of her hitting and abusing her children. The trial court's refusal to allow testimony about her reputation for abusing her children would not, in any event, lead to a reversal in this instance. Appellant's sixth ground of error is overruled.

In his twelfth ground of error, appellant contends that the trial court erred in not granting a new trial upon the post-trial disclosure of several affidavits in the possession of welfare worker Nancy Ramsey. These affidavits related various instances of child abuse by Mary Frances. They were taken in conjunction with a hearing called to determine the custody of Mary Frances' four-year-old daughter. These papers were in existence at the time of the trial in

question, and the appellant had asked to obtain any facts that might be favorable to him in conjunction with this case under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He contends that the prosecution knew of the existence of these affidavits but failed to show it to him.

The record of the hearing on the motion for new trial indicates that the appellant had, at the time of the trial, issued a subpoena duces tecum for the records held by Mrs. Ramsey. Mrs. Ramsey testified at the hearing that she thought her entire file to be available to the appellant by virtue of the subpoena. She testified that the affidavits would have been available to the appellant had he taken advantage of his subpoena. We cannot conclude that the prosecutor violated his duty to disclose favorable evidence to the appellant when the evidence was already available to him. *Brown v. State*, 513 S.W.2d 35 (Tex.Cr.App.1974).

In his third ground of error, the appellant complains of the prosecutor reading, by means of questions and answers, part of two written statements by Mary Frances detailing the facts surrounding Connie Lee's death. On cross-examination, the appellant questioned Mary Frances about inconsistencies in her prior statements and her trial testimony concerning the time the appellant put Connie Lee into a cold shower and the time that the appellant hit Connie Lee with a shoe causing her to become unconscious. The State on redirect tried to read the entire statement. This was objected to by the appellant as bolstering the witness. The objection was sustained and the trial court instructed the jury to disregard the questions and answers concerning the parts of the statement that had not been brought up on cross-examination. The State then limited its questioning of Mary Frances to the segments of the statements asked about on cross-examination. This was done without objection by the appellant. No error is shown. *Twomey v. State*, 520 S.W.2d 784 (Tex.Cr.App.1975). See *Mabou v. State*, 429 S.W.2d 891 (Tex. Cr.App.1968).

In ground of error fifteen, appellant urges that the trial court erred in overruling the appellant's motion for mistrial after the prosecutor asked the appellant the following about his deceased wife:

"Q. David, have you ever met any other woman that have this strange power over you that Mary has?

"A. Just my late wife, I guess.

"Q. The one who shot herself?

"A. Yes, Sir.

"Q. Uh-huh. She had that power over you, too. She thought so much of you that you drove her to suicide, isn't that a fact?"

The trial court sustained appellant's late objection to the last question and instructed the jury to disregard it. Appellant had been questioned about Mary Frances having some sort of spell upon him. When asked if any other woman had such a spell upon him, he answered that his former wife had. In light of the preceding questions about his former wife, which were not objected to by the appellant, the prosecutor's remarks were not so irrelevant as to be calculated solely to inflame the minds of the jurors. The trial court's instruction to disregard was sufficient to cure the prejudical effect of the question.

The appellant contends in his sixteenth and final ground of error that the trial court should have submitted his requested charge on accomplice testimony. He argues that the evidence raised the issue that Mary Frances was an accomplice to the crime.

The appellant testified that Mary Frances caused Connie's death. He stated that it was Mary Frances who refused to take Connie to the hospital and that she fabricated the story of the child falling out of a truck. The doctor attending Connie at the hospital testified that the appellant told the story of the child falling from the automobile and that Mary Frances said little or nothing while at the hospital. The fact that other witnesses testified that Mary Frances had, on occasion, been away from the appellant between the 5th and 9th of January but said nothing about the injured

child does not raise an inference that the couple was working together to further Connie's death.

■ An accomplice is someone who has worked with another before, during or after the commission of a crime. *Singletary v. State,* 509 S.W.2d 572 (Tex.Cr.App. 1974). The fact that a person does not inform on a person he knows to have committed a crime does not make that person an accomplice to the crime. *Prine v. State,* 509 S.W.2d 617 (Tex.Cr.App.1974). The evidence does not show that the couple worked together in the commission of this offense. She denied involvement in the homicide. Appellant's testimony does not show that they acted together in the commission of the homicide. No charge on accomplice testimony was necessary; the trial court did not err in the refusing the requested charge. See *Hunt v. State,* 492 S.W.2d 540 (Tex.Cr.App.1973); *Moxie v. State,* 54 Tex. Cr.R. 529, 114 S.W. 375 (1908).

Finding no reversible error, the judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

DALLY, Commissioner.

The appellant's motion for leave to file motion for rehearing was granted. After further consideration, we have concluded that the appeal was properly decided on original submission and the motion for rehearing should be overruled. However, on original submission the appellant's ground of error number thirteen was not discussed; we will do so now.

■ In rebuttal after the defense had rested, the State called as a witness Bill Lee Jones, the former husband of the appellant's wife Mary Frances. Jones was the father of the deceased child. He testified that he was married to Mary Frances the early part of 1971 and that they were divorced in 1972. He also testified that while they were married Mary Frances had cared for the children. Jones was then asked whether Mary Frances had ever abused or harmed the children. He answered, "Nev-

er." Defense counsel then objected on the grounds that this elicited testimony concerning a time which predated those to which defense counsel had been restricted, also that to permit such testimony would be inconsistent with the court's prior ruling. The court sustained the objection and instructed the jury not to consider the question or the answer. A motion for mistrial was overruled. The trial court's prompt action in sustaining the objection and in instructing the jury to disregard the question and the answer adequately protected the appellant's rights; reversible error is not shown. See *Stokes v. State,* 506 S.W.2d 860 (Tex.Cr.App.1974); *Hopkins v. State,* 480 S.W.2d 212 (Tex.Cr.App.1972); *Allen v. State,* 513 S.W.2d 556 (Tex.Cr.App.1974); *Walker v. State,* 513 S.W.2d 39 (Tex.Cr. App.1974); *Mistrot v. State,* 471 S.W.2d 831 (Tex.Cr.App.1971).

The appellant's motion for rehearing is overruled.

Opinion approved by the Court.

ROBERTS, Judge, dissenting.

The majority overrules appellant's motion for rehearing. I would grant the motion and reverse.

On original submission appellant's voluntary manslaughter conviction was affirmed. The principal issue in the case is the extent of appellant's right to show the bias and prejudice of the State's main witness.

The evidence was summarized in detail in the court's opinion on original submission. Briefly, however, the State's evidence, which came principally from Mary Frances Kusenberger, was as follows: Mary Frances was the mother of two girls, Lola Jean and Connie, when she met and married the appellant. According to Mary Frances, the appellant began beating the children in early December, 1973, when appellant's money ran out. At that time Lola Jean was four years old and Connie was two.

According to Mary Frances, this mistreatment reached its peak on January 5, 1974,

at appellant's brother's house. There, in order to punish Connie, appellant slammed a door against the child, threw her to the floor, threw a shoe at her and hit her on the head with it, and whipped her severely with his belt between her legs and on her stomach and arms.

Mary Frances's testimony was that appellant then refused to allow her to take Connie to a hospital. She also testified that during the next few days she was unable to get away from appellant long enough to get help for Connie. Mary Frances also stated that she was afraid of appellant.

On January 9, 1974, Connie stopped breathing. Appellant and Mary Frances took her to a hospital, where doctors determined that she was dead.

Appellant and Mary Frances first told a physician at the hospital that Connie's injuries had been caused by a fall from a moving truck several days before. Subsequently, Mary Frances asked to be taken to a separate room, where she told a nurse that Connie's death had in fact been caused by appellant's having beaten the child.

Mary Frances testified that she had never beaten either of her children.

Appellant testified that it was Mary Frances who caused Connie's injuries. He testified that she frequently hit the two girls with a hair brush on various parts of their bodies. According to appellant, Mary Frances physically abused the children many times during December and January; on January 1, 1974, she attempted to throw Connie from a moving car, but was prevented from doing so by appellant.

According to appellant, the fatal wounds were inflicted on Connie by Mary Frances on January 6, 1974. Appellant woke up in the night and discovered that Mary Frances was angrily beating the children with a hair brush. In order to placate Mary Frances, whose anger had increased when Connie wet her pants, the appellant took off his belt and lightly spanked Connie "three or four little spats on the rear."

Mary Frances than grabbed Connie and "jerked" the child away from appellant.

She then began beating Connie "back and forth with her hand." According to appellant, he grabbed at Mary Frances in order to help Connie, but Mary Frances dropped Connie in the process.

Appellant testified that he was not able to see the bruises on Connie's body after this beating because Mary Frances kept the child completely covered with clothes. He stated that Mary Frances minimized Connie's subsequent unconsciousness by saying that it was caused by a virus. He also testified that when he suggested medical help for Connie, Mary Frances reminded him that Connie was her child, not his.

Appellant denied all of the abusive acts attributed to him by Mary Frances. He presented the testimony of several witnesses who testified that they had seen Mary Frances abuse her children during December and early January.

Appellant admitted that he did not tell the truth at the hospital when he was asked about the cause of Connie's death. He claimed that he lied to protect Mary Frances because she had asked him to do so and because he loved her very much.

Quite clearly, appellant's defense was that Mary Frances had inflicted the fatal injuries without his assistance; appellant attempted to show that Mary Frances was the guilty party by his own testimony and that of other witnesses.

However, appellant *also* attempted to show—by both cross-examination and presentation of testimony—that Mary Frances was a biased and prejudiced witness because her own beating of Connie caused her to be concerned that *she* might be prosecuted for the homicide of Connie. This attempt to show Mary Frances's bias and prejudice and motive for testifying was an altogether different issue from the question of whether it was appellant or Mary Frances who caused Connie's death. See generally, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Evans v. State*, 519 S.W.2d 868, 873 (Tex.Cr.App.1975), and cases there cited.

Thus, there were two separate but related issues which appellant sought to put before the jury: Mary Frances's criminal culpability, on the one hand, and her bias and prejudice as a witness, on the other. That these two issues were not distinguished from one another by the trial court is obvious from the court's rulings. Thus, when appellant first sought to show that Mary Frances had beaten Lola Jean and Connie, the court limited appellant's inquiry to acts occurring on or after December 1, 1973. This was the date, according to Mary Frances, when appellant began beating the children. Later, the court heard expert testimony that some of the bruises on Connie's body could have been inflicted in late November, 1973; at this point the court amended its ruling and allowed appellant to put on evidence of Mary Frances's conduct as far back as the middle or latter part of November.

However, the court refused to allow appellant to show that Mary Frances had beaten Connie and Lola Jean on several occasions prior to the middle of November. Appellant objected to this refusal on the grounds that he was being deprived of his right to show the jury that Mary Frances was biased and prejudiced and therefore not a credible witness.

Appellant developed his bill of exception on this issue outside the presence of the jury: From Patsy Malone he elicited testimony that in September, 1973, Mary Frances had "backhanded [Connie] across the face and knocked her down," apparently because Connie was crying. Appellant then called his sister, Linda Jackson, who testified that in June, 1973, Mary Frances grabbed Connie's hair and jerked Connie by the hair for no apparent reason. Next, Jody Hartsfield testified that on approximately October 12, 1973, she saw Mary Frances kick Connie because Connie asked for a drink of water. Finally, Kathy Tolison testified on the bill of exception that she had lived with Mary Frances for a

period of time and that some two and a half years prior to trial (therefore during April, 1972) she had seen Mary Frances knock Connie up against a wall with her fist after Connie asked for a drink of water. Tolison testified that Connie was a "tiny baby" at the time.

Through this particular testimony the appellant was not attempting to show that Mary Frances had committed the offense, and therefore that appellant was not guilty; he was instead trying to show that Mary Frances had repeatedly beaten and abused Connie over a long period of time. He had good reason to believe that after hearing this evidence the jury might very well infer that Mary Frances felt vulnerable to potential prosecution because of her *long-term* pattern of child abuse. Acceptance of this inference would lead the jury naturally to the conclusion that Mary Frances felt undue pressure to testify as favorably as possible for the State. See *Davis v. Alaska, supra,* 415 U.S. at 317–318, 94 S.Ct. at 1111, 39 L.Ed.2d at 354; *Evans v. State, supra* at 873.[1]

I believe that appellant should have been allowed to present evidence of Mary Frances's repeated and long-term abuse of Connie. It was important for the jury to know that, because of this long-term series of brutal actions, Mary Frances was afraid of being prosecuted herself.

On original submission the majority relied on two factors to uphold the trial court's mid-November time limitation. First, the majority pointed out that the court allowed appellant to cross-examine Mary Frances fully about her treatment of the children during the limited time period. Second, the majority observed that appellant was permitted to show that Mary Frances had mistreated her children during this limited time period.

There is no question that appellant cross-examined Mary Frances fully about her alleged mistreatment of Connie and Lola Jean during the latter part of 1973 and the

---

1. Here, much more than in *Davis* and *Evans,* the testimony of the State's witness was crucial to the State's case. See *Davis, supra,* 415 U.S.

at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354; *Evans, supra* at 873. In truth, it *was* the State's case.

first week of 1974. And it is equally clear that the appellant was allowed to put before the jury evidence that Mary Frances had beaten her children during this same period.

However, under this Court's holdings—as well as the holding in *Davis, supra*—this is simply not enough. Both this Court and the United States Supreme Court have made it clear that the right of an accused to cross-examine an adverse witness for bias is a "vital" constitutional right; therefore, the accused must be allowed *great* latitude in showing *any* fact which would tend to establish the bias, prejudice, or motive for the witness's testimony. *Davis, supra* at 320, 94 S.Ct. at 1112, 39 L.Ed.2d at 356; *Evans, supra* at 871.

I believe that the jury in this case was entitled to know *all* the facts which would tend to show that Mary Frances's testimony was "affected by fear or favor." *Alford v. United States*, 282 U.S. 687, 693, 51 S.Ct. 218, 220, 75 L.Ed. 624, 628–629 (1931) (relied on by the Court in *Davis v. Alaska, supra*). By limiting appellant to the stated time period, the trial court prevented the jury from knowing the full coercive and intimidating effect on Mary Frances of her past conduct. Instead, the jury should have been allowed to infer—if the jurors chose to do so—that because of a long history of child abuse Mary Frances was likely to testify more favorably for the State.

In this regard, the *Evans* case is instructive. In *Evans* Wayne Knock gave the only testimony of several facts which were extremely damaging to the co-defendants, Evans and Meyer.[2]

The co-defendants then attempted to show the jury, and did show by bill of

exception, that Knock had been indicted for sodomy in 1972;[3] that Knock's case was set in the same court as that in which the co-defendants were being tried; that each time the co-defendants' case had been set for trial Knock's sodomy trial had been set to be tried afterward; and that each time the co-defendants' case was reset Knock's case was also reset.

Relying on Art. 38.29, V.A.C.C.P., the trial court refused to allow the jury to receive this evidence. This Court reversed, holding that the defendants were entitled to show "Knock's vulnerable status as an indictee." *Evans v. State, supra* at 873.

The holding in *Evans* stands for the proposition that the co-defendants in that case were not merely entitled to put on evidence that Knock had been indicted; they also had the right to show that his case had repeatedly been reset so that his sodomy indictment would be hanging over him when he testified against Evans and Meyer.

It follows that where the accused desires to show the bias and motive of a witness he is entitled to show the basis of that bias, prejudice, and motive *in its entirety.*[4] Therefore, just as Evans and Meyer were entitled to show *all* of the resettings of Knock's sodomy case, and not just the most recent resetting, so was this appellant entitled to inquire into *all* of Mary Frances's long-term acts of abuse, not just the most recent acts.

In *Coleman v. State*, 545 S.W.2d 831 (Tex. Cr.App.1977), this Court held that the defendant was entitled to present to the jury *all* previous harassing acts committed against him by local police officers, since

---

**2.** The evidence also showed that Knock fit the description of one of the suspects, as described by another of the State's witnesses.

**3.** The murder which Evans and Meyer were alleged to have committed occurred on January 7, 1972.

**4.** Of course, this is necessarily subject to the trial court's broad discretion to prevent repeti-

tive and unduly harassing cross-examination. *Davis, supra*, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353. However, the excluded evidence and cross-examination in the present case were neither repetitive nor harassing; rather, they went to the very heart of the issue of Mary Frances's bias and her motive for testifying.

these acts tended to show the animus, motive, and ill-will of the police officer who arrested appellant and testified against him at trial. In reversing Coleman's conviction we quoted with approval from *Green v. State*, 54 Tex.Cr.R. 3, 7, 111 S.W. 933, 935 (1908), as follows:

"'. . . [A ]ny fact and every fact going or tending to show mental bias, interest, prejudice or any other motive, or mental state, or status [of the witness], which, fairly considered and construed, might even *remotely tend* to affect his credibility, should [be] admitted.'" (Emphasis and bracketed portions added in *Coleman*, at 834.)

We also held in *Coleman* that:

"The motives which operate on the mind of the witness while he testifies should never be regarded as immaterial, because they tend to affect his credibility." *Id.*, at 834.

I therefore conclude that the trial judge impermissibly limited the proof of the witness's bias, prejudice, and motive for testifying. I would grant the appellant's motion for rehearing and reverse the judgment of the trial court.