**Daniel Michael NOACK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0366–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 1, 1983.

Allen Isbell, Houston, for appellant.

Patricia Saum, Houston, for appellee.

Before JACK SMITH, BASS and CO-HEN, JJ.

## OPINION

JACK SMITH, Justice.

Daniel Michael Noack appeals from his conviction of capital murder. He was sentenced to life imprisonment after the jury failed to find that he would commit criminal acts of violence that would constitute a continuing threat to society. He alleges six grounds of error as a basis for reversal of his conviction.

The record reveals that on November 2, 1980, between 12:00 A.M. and 12:15 A.M., the appellant and his girlfriend went to the apartment of John Bowen Coffman for the

purpose of inviting Coffman and his girlfriend to a party.

Coffman, testifying as a State's witness, stated that he initially declined the invitation because he was not feeling well. After further conversation, the appellant showed Coffman a German Luger .38 pistol which he stated he had taken from a house earlier that evening. The appellant then asked Coffman if he could buy back a ring which he had traded to Coffman for marijuana the previous year. He stated he had no cash but would trade gold he had obtained from the burglary. Coffman agreed to accompany the appellant to his motel and the two men drove to an apartment complex located at the intersection of Interstate 10 West and Bunker Hill Street. The two exited the truck, went through a hole in a fence, and began to walk across a parking lot. As they were proceeding, a Hedwig Village policeman drove up to where they were walking and shouted at them to take their hands out of their pockets.

Coffman stated that the two of them complied with the policeman's instructions, but as the policeman began to get out of his car, the appellant began to run toward the back of a Toys 'R Us store. The policeman got back into the car and chased the appellant. Coffman watched the chase and then went back to the apartment house to see if he could arrange for someone to pick him up. He stated he heard three shots, but he did not see the appellant again that evening.

Coffman learned the next day, a Sunday, that a Hedwig Village police officer had been killed the night before. On Monday, Coffman went to the Houston Police Department with his mother, his girlfriend, and his lawyer to give a statement.

On cross-examination, Coffman admitted to having been convicted of a burglary, and having recently purchased a gun. He stated that he and the appellant had done nothing illegal on the night of November 2, 1980, and were merely walking through a parking lot when the police stopped them.

Laurie Green testified that she lived with John Coffman. Her testimony corroborated the testimony of John Coffman concerning the events that occurred on the night of November 2 prior to the time that Coffman and the appellant left for the appellant's motel.

Ms. Green then testified that after the men had been gone for about 1½ hours, the appellant returned to the apartment to get his girlfriend. She stated the appellant appeared excited and when Ms. Green asked him where Coffman was, the appellant replied, "the police either got him or he ran. Come on, Toni. I just killed a pig. If they caught John, they'll be here any second".

Debbie Siemans, the appellant's aunt, testified that the appellant and his girlfriend came to her home in the early morning on November 2, 1980. She stated that later that day she and her husband hosted a barbecue which was attended by the appellant and other members of the family. After eating, the family watched the news on television where a report of the murder of a Hedwig Village policeman was broadcast. At this time, the appellant indicated to his aunt and uncle that he was in trouble and wanted to leave their home. She stated that the appellant's uncle drove him to a Holiday Inn in Conroe, Texas and reserved and paid for a room in the uncle's name. The next morning she stated that she took the appellant to buy some shoes and then took him to see his mother. She stated that she, the appellant's grandmother and his mother all encouraged the appellant to surrender. After she and the appellant left in her car and had driven for some time, the appellant got out of the car and she did not see him again.

William Shoucair, a Hedwig Village police officer, testified that he was on patrol in the early morning hours of November 2, 1980. He stated that Officer Mike Rivers, the deceased, was his patrol supervisor and was also on duty at that time. He testified that he and Rivers had both answered a false alarm at the Toys 'R Us store in Bunker Hill Village around midnight that evening.

At approximately 1:05 A.M. on November 2, Officer Shoucair entered the parking lot of the Toys 'R Us store from the I–10 feeder road. He testified that he observed two white males walking east across the parking lot in front of Toys 'R Us. He stated he was in uniform and was driving a marked police vehicle, and as he approached the men he observed them watching him. At this time, Officer Shoucair made a radio transmission that he was stopping two white males and gave his location. As he stopped his car and began to open the door, he told the two men to take their hands out of their pockets. Both men complied and the appellant placed his hands on the front of the police car and assumed a search position. As Officer Shoucair began to get out of his car, the appellant broke and began to run. Officer Shoucair immediately got back behind the steering wheel and gave chase.

Officer Shoucair then radioed that he was chasing a white male and gave the direction and a brief description. Officer Rivers acknowledged the transmission. Officer Shoucair then received a transmission from Officer Rivers and proceeded to assist him. As he proceeded to Officer Rivers' location, he observed another white male, later identified as Mr. Avery. He observed Mr. Avery drop to the ground and then saw Officer Rivers' patrol unit with the headlights on and both doors open.

Officer Shoucair drove around a store to check out an alley and while doing this, he observed what appeared to be another police officer running toward the alley from a different direction. He then exited his vehicle and began to walk through the alley. As he did so, he attempted to contact Officer Rivers on the radio but was unsuccessful. At the east side of the alley, Officer Shoucair found Officer Rivers lying in a pool of blood. Officer Rivers had a gunshot wound over his right eye and the back of his head was covered with blood. Officer Shoucair checked for vital signs and found none.

Gerald Avery testified that he was employed by the Memorial Villa Apartments on November 2, 1980. He stated that he was walking home from a restaurant that night when he observed a Hedwig Village police car speeding down Bunker Hill Road near the Lewis and Coker store. He then saw someone push their head through an opening in the fence. That person looked around and then began running back toward the shopping center. He then saw another person come through the fence and he saw another police car speed by. At this point, he heard shots fired and he dropped to the ground. He next observed a police car come back to the shopping center and stop. When Avery stood up he saw someone lying on the ground of the parking lot and someone else standing over that person using a flashlight.

Detective C.W. Kent, of the homicide division of the Houston Police Department, testified that he was in charge of the crime scene where Officer Rivers was killed. Three nine mm. hulls were found at the scene. Detective P.L. Trumble viewed Officer Rivers' body at Memorial City Hospital, and observed three entry and exit wounds.

Henriette Lindemann testified that she saw the appellant's picture in the newspaper as a suspect in Officer Rivers' shooting. She said she recognized the appellant as a frequent patron of her 7–11 convenience store in Pasadena. When the appellant came into her store on November 6, 1980, she called the police and gave them the license number of the appellant's vehicle.

Officer L.E. Stewart, of the Pasadena Police Department, testified he was on duty on November 6 when he received a transmission concerning the appellant. The broadcast described appellant as white male, 5'7", weighing approximately 120 pounds. When Officer Stewart approached a pedestrian who fit this description, the pedestrian broke and ran. The appellant was subsequently captured by Officers Anderson and Harvey. These officers recovered a 9 mm. ammunition clip from the appellant's pants pocket.

Another officer found a Luger pistol, after searching the immediate area of the

appellant's arrest, on November 6. Although no finger prints were found on the pistol or on the clip, a firearms examiner testified that he test fired the Luger found by the Pasadena Police on the date of the appellant's arrest and compared the hulls with the hulls that were recovered near Officer Rivers' body. He stated that he was of the opinion that two of the three hulls found near Officer Rivers' body were fired from that pistol. He testified that the third hull had insufficient markings to make a valid comparison.

Testimony by a chemist and toxicologist showed that fibers found in the well of the Luger were identical to those of a jacket in the appellant's possession at the time of his arrest. Additionally, other fibers found in the well of the 9 .mm clip also matched the appellant's blue jeans.

The appellant initially argues that the charge in the instant case was defective because it enabled the jury to convict the appellant on either of two theories: (1) appellant killed the officer while in the course of resisting arrest; (2) appellant killed the officer while in the course of evading arrest. He alleges that the theory upon which the jury convicted the appellant cannot be ascertained from the verdict of guilty. He also alleges that the court erred in instructing the jury on the law of resisting arrest because this issue was not raised by the evidence. He states that this instruction allowed the State to bootstrap its way into a capital murder conviction. Finally, he asserts that the charge was fundamentally defective because it did not require the jury to find which offense Officer Rivers was arresting him for when the officer was killed.

The State contends that the charge was not defective because it correctly applied the law to the facts. It asserts that the instruction regarding the law of resisting arrest was not error even if it was superfluous. Finally, the State asserts that the failure of the charge to require the jury to find that the appellant was committing one of the offenses when he allegedly killed Officer Rivers, was not fundamental error.

The court charged the jury on the law of both capital murder and felony murder. The charge permitted the jurors to find the appellant not guilty of capital murder but guilty of the lesser included offense of felony murder if this was found from the evidence.

The charge began by defining the terms murder, capital murder, intent and knowledge. It then instructed the jury on the law of capital murder as follows:

Before you would be warranted in finding the defendant guilty of capital murder, you must find from the evidence beyond a reasonable doubt that:

(1) the defendant intentionally or knowingly caused the death of Michael Wayne Rivers by shooting him with a gun, and

(2) that at the time of the shooting, if any, the deceased, Michael Wayne Rivers, was then and there a peace officer, and

(3) that the defendant then and there knew at the time of the shooting, if any, that Michael Wayne Rivers was a peace officer, and

(4) that Michael Wayne Rivers, at the time of the shooting, if any, was acting in the lawful discharge of an official duty.

If you should have a reasonable doubt as to the existence of any of the foregoing elements, then you cannot find defendant guilty of capital murder.

The charge next gave further instructions and then applied the law to the facts as follows:

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of November, 1980, in Harris County, Texas the defendant, Daniel Michael Noack, did knowingly or intentionally cause the death of Michael Wayne Rivers by shooting him with a gun, and you further believe and find from the evidence beyond a reasonable doubt that at such time and place the said Michael Wayne Rivers was a peace officer employed by Hedwig Village Police Department and that the said Michael Wayne Rivers was acting in the lawful

discharge of an official duty and that the said Daniel Michael Noack, did then and there know the said Michael Wayne Rivers was a peace officer, you will find the defendant guilty of capital murder, as charged in the indictment.

If you do not so believe and find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of capital murder and proceed to consider whether the defendant is guilty of the lesser included offense of felony murder.

Now, bearing in mind the foregoing instructions, if you believe and find from the evidence beyond a reasonable doubt that the defendant, DANIEL MICHAEL NOACK, on or about the 2nd day of November, 1980 in Harris County, Texas, did then and there knowingly or intentionally cause the death of Michael Wayne Rivers by shooting him with a gun, but you have a reasonable doubt from the evidence that at the time of the shooting, if any, the deceased, Michael Wayne Rivers, was then and there a peace officer, or that Michael Wayne Rivers at the time of the shooting, if any, was acting in the lawful discharge of an official duty, then you will find the defendant guilty of felony murder.

■　The charge included definitions and instructions regarding the law of resisting and evading arrest to enable the jury to consider the lesser included offense of felony-murder. We reach this conclusion because had the jury acquitted the appellant of capital murder, the charge required them to decide whether appellant was guilty of the lesser included offense of felony-murder. The theory of felony murder presented in the charge appears to be that the appellant killed Officer Rivers in the course of resisting arrest, a crime that is a third-degree felony. Tex.Penal Code Ann. § 38.-03(d) (Vernon 1974). Since the jury found the appellant guilty of capital murder, and thus did not consider felony-murder, this court need not consider the propriety of the charge as it relates to felony-murder.

■　The charge correctly stated the elements of capital murder and correctly applied the law of capital murder to the facts. Thus, the court properly charged the jury on capital murder and therefore no error is presented. *See, Hazkell v. State,* 616 S.W.2d 204 (Tex.Cr.App.1981).

■　A review of a charge should not be limited to parts of the charge standing alone, rather the charge must be read as a whole. *Simmons v. State,* 622 S.W.2d 111 (Tex.Cr.App.1981). When the charge in this case is read as a whole, the portions of the charge dealing with the law of capital murder and its application to the facts is correct. We construe the appellant's complaints as being applicable to the felony-murder portion of the charge. Any error in the charge regarding the lesser included offense of felony-murder would be harmless.

The appellant's first three grounds of error are overruled.

By his fourth and fifth grounds of error, the appellant alleges that John Coffman was an accomplice and the trial court erred by failing to instruct the jury about the accomplice witness rule.

The first question raised by these grounds is whether the evidence raised an issue as to John Coffman's complicity in the murder of Officer Rivers. The appellant argues that Coffman admitted his complicity when he said he accompanied the appellant to get items which Coffman knew were the proceeds of a burglary. He further argues that Coffman's complicity is established by the fact that Coffman knew the appellant was carrying a gun.

■　An accomplice witness is someone who has participated with another, before, during, or after the commission of a crime and must be someone who could be prosecuted for the offense of which the accused is charged. *Easter v. State,* 536 S.W.2d 223 (Tex.Cr.App.1976); *Jackson v. State,* 552 S.W.2d 798 (Tex.Cr.App.1977). However, the mere presence of a witness at the scene of an offense does not compel the conclusion that the witness is an accomplice wit-

ness. *Arney v. State,* 580 S.W.2d 836 (Tex. Cr.App.1979); *Villarreal v. State,* 576 S.W.2d 51 (Tex.Cr.App.1978), *cert. denied,* 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979). Furthermore, one is not an accomplice witness who cannot be prosecuted for the offense with which the accused is charged. *Villarreal v. State, supra; Easter v. State, supra.*

■ The evidence in the instant case does not support the conclusion that Coffman was an accomplice witness. Coffman's admission that he was accompanying the appellant to the appellant's motel, where the proceeds of a previous burglary were kept, establishes, at most, that Coffman may have been an accomplice to the burglary. There is no evidence that Coffman knew the appellant would break and run when the Hedwig Village police attempted an investigative stop. There is no evidence of a plan or scheme by Coffman and the appellant that they would shoot if the police attempted to arrest them. There is, however, evidence that Coffman was not present when the appellant shot Officer Rivers. There is also evidence that Coffman did not see the appellant again, did not help the appellant escape, and did not hide the appellant from the police. Under the law of criminal responsibility for the conduct of another, John Coffman could not have been prosecuted for capital murder. Tex.Penal Code Ann. Section 7.02(a), (b) (Vernon 1978). Therefore, Coffman was not an accomplice witness. The appellant's fourth and fifth grounds of error are overruled.

By his final ground of error, the appellant alleges that the trial court erred in failing to instruct the jury that the inarticulate hunch, suspicion or good faith of a peace officer does not warrant an arrest, seizure or temporary detention of a citizen. The appellant relies on Art. 38.23, Tex.Code Crim.Pro.Ann. (Vernon 1979).

The undisputed facts in the instant case show that at approximately midnight, 12:00 A.M., November 2, 1980, the deceased and a fellow officer answered a false burglary alarm at the Toys 'R Us store. Approximately one hour later the appellant and Mr. Coffman were seen walking in the parking lot of this same store. When they were approached by a police officer and told to take their hands out of their pocket the appellant broke and began to run. The officer who was attempting to stop the two men transmitted by radio a brief description of the appellant and gave the direction in which the appellant was traveling. The deceased officer was shot in the head while trying to locate the appellant near the location described in the radio transmission.

■ A police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Williams v. State,* 621 S.W.2d 609 (Tex.Cr.App.1981).

The Texas Court of Criminal Appeals has held that in order to justify a stop, a peace officer must be able to relate specific and articulable facts which, in light of his experience and personal knowledge taken together with rational inferences from those facts, would constitute more than a mere inarticulable hunch, suspicion, or good faith suspicion that a crime is in progress. *See, Hull v. State,* 613 S.W.2d 735 (Tex.Cr.App. 1981); *Accord, U.S. v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

■ As shown in *Terry v. Ohio, supra,* circumstances arise frequently in day-to-day police work where wholly lawful conduct might arouse suspicion that criminal activity is afoot and justify a temporary detention for further investigation. This is such a case. The trial court properly excluded an instruction to the jury that the inarticulate hunch, suspicion, or good faith of a peace officer does not warrant an arrest, seizure or temporary detention of a citizen. The evidence established that the officer's temporary detention of the appellant and Coffman was justified. Further, this evidence was uncontested. *See, Rose v. State,* 470 S.W.2d 198 (Tex.Cr.App.1971).

The appellant's sixth ground of error is overruled.

The judgment of the trial court is affirmed.